STATE *v.* RUTLAND RAILWAY, LIGHT & POWER COMPANY.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 9, 1911.

*Corporations—Charter Fee—Consolidation of Corporations—Construction of Statutes—"Persons"—De Facto Corporations—Stipulations—Construction.*

The word "persons" in P. S. 4287, as amended by No. 103, Acts 1908, providing that "three or more persons of age may, by articles of association, form a corporation," denotes natural persons only, and so the consolidation of several existing corporations into a new corporation cannot be accomplished by virtue of that statute.

If an attempted consolidation of corporations was without legislative authority, no charter fee would accrue to the State, for thereby not even a *de facto* corporation would result, as a *de facto* corporation can exist only by virtue of a law under which a *de jure* corporation could be created.

In 1896 four corporations, organized and existing under the laws of this State, filed with the Secretary of State an agreement for consolidation, the consolidated company being called the Rutland Railway, Light & Power Company, and all the property of the four corporations being turned over to it, but it never paid any charter fee to the State. No. 303, Acts 1908, legalizes all acts and contracts whereby this consolidation was accomplished, and provides that all the charter rights conferred upon the four companies should be conferred upon the consolidated company. *Held,* that the word "persons" in P. S. 800, providing that "persons" seeking incorporation by a special act of the General Assembly should, before the bill was introduced for that purpose, deposit a designated charter fee, includes previously existing

corporations, as well as natural persons, and that when No. 303, Acts 1908, was enacted, the Rutland Railway, Light & Power Company became a corporation by special act, making the charter fee that should have been deposited when the bill was introduced, belong to the State, and, as it was not so deposited, the State might thereafter collect it by a suit against the consolidated company.

In an action by the State to recover a charter fee from a corporation, created by a special act of the Legislature by the consolidation of four existing corporations, the parties stipulated that the State's claim was that there was due it "a charter tax or additional tax" from the consolidated company or a designated one of the formerly existing corporations, or both, and that "said companies claim that no additional charter tax is by law due from them to the State." *Held,* that the stipulation covered a claim against the consolidated company for the charter fee required by P. S. 800, to be deposited before the special act of incorporation was introduced in the General Assembly, but which in fact was not then paid.

GENERAL ASSUMPSIT. Plea, the general issue with notice. Trial by court on an agreed statement of facts at the December Term, 1910, Windsor County, *Waterman,* J., presiding. Judgment, *pro forma,* for the plaintiff for $500 and costs. The defendant excepted. The opinion states the case.

*T. W. Moloney* for the defendant.

*John G. Sargent, Attorney General,* and *Homer L. Skeels, States Attorney,* for the State.

The State has the power to put a price on corporate privileges and to exact a bonus for the granting of a franchise. *Gordon* v. *Appeal Tax Court,* 44 U. S. 3 How. 133; *Baltimore & Ohio R. R. Co.* v. *Maryland,* 88 U. S. 21 Wall. 456. These four corporations sought a franchise to be one corporation. A new company is formed by the extinguishment of the old ones. *Shields* v. *Ohio,* 95 U. S. 324.

POWERS, J. In 1896, four corporations having their principal offices at Rutland executed and filed with the secretary of state an agreement for consolidation. The constituent companies were the Peoples Gas Light Company, the Rutland

Street Railway Company, the Vermont Internal Improvement Company, and the Chittenden Power Company, and the consolidated company was styled the Rutland Railway, Light and Power Company. In accordance with the consolidation agreement, the stock of the consolidated company was issued in exchange for that of the constituent companies, and all the property of the latter was turned over to the former. Each of the constituent companies had paid all charter fees and license taxes called for by the law, but the defendant never paid a charter fee, save as hereinafter stated. In 1908, a bill, which finally became No. 303, Acts of 1908, was introduced into the Legislature passed the House and Senate, and went to the Governor for his approval. While this bill was awaiting the Governor's signature, the treasurer of the State made a claim that the defendant owed the State an unpaid charter tax. This claim was denied by the defendant, but rather than have the approval of the bill delayed or imperiled by it, the defendant entered into a stipulation with the attorney general whereby it was agreed that the defendant should deposit the sum of five hundred dollars—the maximum sum for which it could be liable—with the state treasurer to await the result of this friendly suit to be brought in Windsor County for convenience, and in case the State prevailed therein this deposit was to be used to liquidate the judgment; otherwise, it was to be returned.

The deposit was made, and thereupon the pending bill was approved by the Governor. This suit was brought July 20, 1909, specification covering a charter fee of five hundred dollars was filed August 13, 1909, defendant's plea and notice were filed January 1, 1910, an agreed statement of facts was filed, and a trial by court had thereon. Judgment was rendered for the plaintiff for five hundred dollars, to which the defendant excepted.

The defendant claims that each of the consolidating corporations had been duly authorized by the Legislature to enter into the consolidation agreement, and that the result was a new corporation, legally created, vested with all the rights, privileges, franchises and property of the old corporations, which were wiped out by the transaction. The State does not challenge the authority of the constituent companies,.

though an examination of the acts referred to in support of their authority discloses that interesting, if not difficult questions would be presented if we were called upon to investigate that subject. But whether this attempted consolidation resulted as the defendant claims or was ineffective for want of legislative authority in some or all of the parties thereto is a question we are not called upon to decide. The consolidation, if valid, did not alone entitle the State to a charter fee. No fee would accrue under P. S. 4287, which provides (as amended) that three or more "persons" may by articles of association form a corporation, because it refers to natural persons only, and not to corporations. This is apparent from the requirement that the persons associating shall be "of age"—which could not, of course, refer to artificial persons. And were these qualifying words omitted from the statute, the result would be the same. Thus it was held in *Factors, etc. Ins. Co.* v. *New Harbor Protection Co.*, 37 La. Ann. 233, that a corporation was not a "person" within the meaning of a statute authorizing the formation of a corporation by not less than six persons. And in *Denny Hotel Co.* v. *Schram*, 6 Wash. 134, 32 Pac. 1002, 36 Am. St. Rep. 130, it was held that a statute empowering two or more "persons" to form a corporation, did not authorize a corporation to become a subscriber to the stock of another corporation, though another statute provided that the term "person" might be construed to include a corporation.

Nor would a fee accrue under P. S. 800, for corporations formed by the consolidation of pre-existing corporations are not therein provided for. While it is true that a corporation so formed becomes a new and distinct corporation,—assuming that the consolidation is legally accomplished—and that by means of a contract entered into between its constituent companies, it derives its corporate character from the Legislature through the act or acts authorizing the consolidation. So it is held that a special act authorizing consolidation contravenes a constitutional provision against the creation of corporations by special act. *Shields* v. *Ohio*, 95 U. S. 323, 24 L. ed. 357. Though such a corporation is, in this sense, created by a special act of the Legislature, it is apparent that it is not covered by P. S. 800, for it cannot be known when the legislative authority

is granted or at any other time prior to the consolidation whether the authority will be made use of and a consolidation effected, or its terms, or the amount of the capital stock of the consolidated company, which is made the basis of the amount of the tax required. And besides the provision for prepayment is wholly inapplicable and impossible in the case of a consolidated corporation so brought into existence.

If the attempted consolidation was illegal for want of legislative authority, no fee could accrue to the State, because not even a *de facto* corporation resulted; such a corporation can exist only when there is a law under which a *de jure* corporation could be created. Noyes Intercorp. Relations, §§17, 92; *American Loan etc. Co.* v. *Minnesota, etc. R. Co.,* 157 Ill. 641, 42 N. E. 153.

It follows that if the State is entitled to a charter fee from the defendant, it accrued upon the passage of No. 303, Acts of 1908, by force of P. S. 800,—which provides that "persons seeking incorporation by special act of the general assembly" shall deposit as therein provided the fee therein specified. Here, again, use is made of the term "persons;" but not, we think, in the restricted sense. By P. S. 26 it is provided that the word "persons" may extend and be applied to bodies corporate and politic; and the section under consideration was, we think, intended to cover all who apply,—be they natural persons or corporations previously existing. We are confirmed in this opinion by the fact that when this statute was enacted,—No. 19, Acts of 1898,—it read "any body or persons seeking incorporation," etc.,—the present reading of the section being the result of revision. The language of the original act indicates an appreciation of the fact that circumstances might arise which would impel a corporation, through doubt of the legality of its organization or for some other reason of its own, to seek a special act of the Legislature confirming or declaring, in express terms, its corporate character. An examination of No. 303, discloses that the first section thereof confirms and legalizes all acts and contracts whereby the Rutland Street Railway Company, the Peoples Gas Light Company, the Chittenden Power Company and the Rutland City Electric Company consolidated with the Vermont Internal Improvement Company.

This is the first time the name of the Rutland City Electric Company appears in any of the proceedings. But it may well be taken that this was an attempt to ratify by legislative action the consolidation hereinbefore discussed. The second section of the act provides that all the charter rights, franchises, powers, and privileges conferred upon the five companies just named are continued in force and conferred upon the defendant company, and that each of the constituent companies should cease to exist. When this bill was introduced into the Legislature the defendant or the constituent companies, or both, were "seeking incorporation by special act of the General Assembly," and it made no difference whether the defendant was then a legal corporation or not. When the act became a law, the defendant was a corporation by special act of the Legislature, regardless of what its previous status was. We must assume that a sufficient reason existed for this application; with what that reason was, we have no concern. Previous thereto, the statutory deposit should have been made. When the act became effective the deposit would have become the money of the State. Not having been made in advance it can now be collected in this suit. There is no merit in the defendant's contention that the effect of P. S. 800 is not to require a charter fee from all corporations chartered by special act. It is the same as it would be had the section provided that all such corporations should pay the fee, and then required that it should be paid in advance. The acceptance of a charter specially granted or of a confirmatory act like the one here involved carries with it an implied promise to pay the fee.

Nor can we sustain the defendant's claim that the judgment below was based upon a different claim than that covered by the stipulation. The defendant insists that the stipulation only relates to a fee or fees which had become payable to the State before the introduction of the bill which became No. 303, while the judgment was rendered for a fee which accrued to the State upon the passage of that act. The stipulation refers to a claim on the part of the State that there "is due to the State a charter tax or an additional tax" from the defendant or the Improvement Company, or both. It also states that "the said companies claim that no additional charter tax is

by law due from them to the State.'' The specification filed
by the plaintiff recites that the plaintiff "seeks to recover the
sum of five hundred dollars due the plaintiff from the defendant
for defendant's charter fee." The language of the stipulation
is broad enough to cover the claim on which the judgment
was based, for as we have seen, the fee was then due the State,
since it was entitled to have it paid before the pending act be-
came a law.

*Affirmed.*