PUERTO RICO GLASS CORPORATION, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. AGUSTÍN MANGUAL HERNÁNDEZ, JUEZ, demandado; NERIO TORRES Y OTROS, GONZALO GARCÍA DE JESÚS Y OTROS, interventores.

*Número:* O-73-154 *Resuelto:* 9 de enero de 1975

*Saldaña & López Baralt* y *José Angel Rey,* abogados de la peticionaria; *Carlos Pérez Padilla* y *Leonardo Llequis,* abogados de los interventores; *Wilfredo Luciano Quiñones,* abogado de la Sucesión de Francisco Piñero, interventora.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

En *Amer. Col. Broad. Corp.* v. *Tribunal Superior,* 94 D.P.R. 283 (1967), resolvimos que era nula y no constituía por tanto cosa juzgada una sentencia desestimando una

querella en reclamación de salarios, dictada a base de una estipulación que no fue aprobada por el Secretario del Trabajo, por constituir dicha estipulación una transacción entre los querellantes y el patrono querellado. Se nos plantea ahora si la misma doctrina aplica cuando la sentencia se basa en una moción de desistimiento hecha por los empleados querellantes y consentida por la parte querellada. Resolvemos que bajo las circunstancias aquí presentes la moción no equivale a una transacción y por tanto no era indispensable la aprobación del Secretario del Trabajo. La autorización para el desistimiento, dada expresamente por los querellantes bajo su firma, basada en el convencimiento tanto de los querellantes como de su abogado, de que carecen de causa de acción, y exponiendo en sus detalles los hechos demostrativos de tal carencia de causa de acción, impide un ataque colateral a la sentencia dentro de otro pleito en que se formula la misma reclamación.

En mayo de 1967 fue presentada en el Tribunal Superior, Sala de San Juan, una querella formulada por Tomás López Bruno y otros empleados de Puerto Rico Glass Corporation. Reclamaban de esa corporación la cantidad de $441,000, más una suma igual como penalidad, costas y honorarios de abogado, alegando haber sido empleados de la querellada durante los diez años anteriores a la fecha de la querella y que durante ese tiempo no se les habían compensado las horas trabajadas en exceso de la jornada legal ni las trabajadas durante el período designado por ley para tomar alimentos. La querellada contestó el 1 de agosto de 1967 y alegó como defensa afirmativa, entre otras, que los querellantes "siempre prestaron servicios a la demandada como 'administradores y/o ejecutivos' y que las disposiciones estatutarias y decretos mandatorios invocados en la querella no son aplicables a los administradores, ejecutivos y profesionales."

Transcurrieron dos años. En septiembre de 1969 los querellantes presentaron una moción de desistimiento bajo la Regla 39.1 (b) de Procedimiento Civil, alegando que luego de

hacer "uso extensivo de los métodos de descubrimiento de pruebas" y de haber "examinado minuciosamente las nóminas, récords, constancia de pago y demás documentos de la querellada relacionados con la reclamación" y de haber hecho "una investigación exhaustiva de todos los hechos de este caso" (párrafo 3), "cada uno de los querellantes, al igual que su abogado que suscribe, se han convencido de que no les asiste razón en su reclamación." (Párrafo 4). Se solicitaba en uno de los párrafos expositivos de la moción que se compensara al abogado de los querellantes "mediante el pago de honorarios razonables" en atención a que realizó "numerosas gestiones" e incurrió en "gastos considerables de su propio peculio en la tramitación de la querella, y en consideración del tiempo y recursos a economizarse por la parte querellada al no tener que continuar con la litigación de este caso." (Párrafo 6). En el párrafo final o súplica solicitaron los querellantes que se les tuviera por desistidos de su reclamación y se dictara sentencia "ordenando y decretando el desistimiento con perjuicio y con carácter final y firme."

La moción fue suscrita por el Lic. Nicolás Delgado Figueroa como abogado de los querellantes. En nota a su calce firmó conforme el Lic. Juan L. Doval, uno de los abogados de la querellada. La moción se acompañó de extensas declaraciones suscritas individualmente por cada uno de los querellantes autorizando "expresa y voluntariamente" al Lic. Delgado Figueroa para "desistir a su nombre con perjuicio de la presente reclamación" e informando haber leído y estar conforme y "en absoluto acuerdo" con la moción de desistimiento y no tener interés en proseguir con los procedimientos. Decía cada uno de los querellantes, refiriéndose al período cubierto por la querella: "El suscribiente reconoce que durante todo dicho período su deber primordial ha consistido en la dirección de un habitual reconocido departamento o subdivisión de la empresa, integrado por personal regular y permanentemente adscrito al mismo, y que dedicaba la mayor parte

de su tiempo a labores gerenciales. Admite también que habitual y regularmente ha dirigido el trabajo de otros dos o más empleados de la empresa durante todo el período de la querella y que siempre ha tenido la autoridad de hacer sugerencias y recomendaciones sobre el empleo y despido de otros empleados, al igual que sobre el mejoramiento, ascenso y cambio de status de otros empleados, y que sus recomendaciones y sugerencias siempre han recibido especial y particular atención y han sido seguidas por la empresa." La declaración terminaba con el siguiente párrafo:

"El suscribiente reconoce además, que habitual, regularmente y de ordinario, ha ejercido y ejerce facultades y poderes discrecionales, particularmente al entrenar personal, dirigir el trabajo de sus subalternos, al apreciar su eficiencia para recomendar ascensos y cambios en el status y al planificar y supervisar el trabajo de sus subalternos. Durante todo el período de la querella hasta el presente, ha dedicado más de un 80% de su tiempo laborable a actividades directa e íntimamente relacionadas con sus funciones gerenciales, ejecutivas y de supervisión en la dirección de un departamento de la corporación y en la dirección del trabajo de otros dos o más empleados de la empresa. Durante el referido período siempre ha recibido por sus servicios una compensación fija equivalente a un salario semanal no menor de $75.00, excluyendo alimentos, vivienda u otros servicios."

El 9 de septiembre de 1969 el Tribunal Superior dictó sentencia aprobando la moción de desistimiento, la que hizo formar parte de la sentencia. Aunque nada dispuso sobre la solicitud de honorarios de abogado es un hecho indisputado que Puerto Rico Glass pagó $5,000 en un cheque al Lic. Delgado Figueroa. La sentencia fue registrada y archivada en autos y notificada a las partes, por mediación de sus abogados respectivos, al día siguiente.

Transcurridos más de dos años de ser firme la sentencia se presentaron en diciembre de 1971, esta vez en la Sala de Bayamón del Tribunal Superior, dos nuevas querellas contra Puerto Rico Glass Corporation. Con excepción de tres recla-

mantes los demás querellantes en ambas querellas eran parte del mismo grupo que figuró en la querella del 1967 en San Juan. Las nuevas reclamaciones se basaban en las mismas razones de pedir de la primera. Se alegó que los querellantes trabajaron horas extras y durante el período destinado a tomar alimentos sin que se les compensara, y reclamaron por esos conceptos y por los diez años precedentes a la presentación de las querellas la cantidad total para las dos querellas de $285,000, una suma igual como penalidad, honorarios de abogado y costas.

En su contestación a cada una de las nuevas querellas Puerto Rico Glass opuso, entre otras, la defensa de cosa juzgada, invocando la sentencia por desistimiento dictada el 9 de septiembre de 1969. Alegó además que los querellantes estaban impedidos de reclamar por ser "administradores y/o ejecutivos" según ellos mismos lo reconocieron en la moción de desistimiento y en las declaraciones suscritas por ellos y unidas a dicha moción. A base de esas mismas alegaciones y de que "la querella anterior y la sentencia dictada en la misma constituyen un fraccionamiento de cualquier reclamación durante el período comprendido en la misma hasta la fecha de la sentencia", solicitó sentencia sumaria en cada caso desestimatoria de la querella. Los querellantes se opusieron. Alegaron que la sentencia por desistimiento dictada en el caso anterior es nula e ineficaz por tratarse de una transacción que no fue aprobada por el Secretario del Trabajo y porque el derecho a la compensación adicional a base de tipo doble de salario es irrenunciable. Citaron los Arts. 12 y 13 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. secs. 281 y 282, respectivamente, y lo resuelto en *Amer. Col. Broad. Corp.* v. *Tribunal Superior*, citado al comienzo de esta opinión. Ambos casos fueron consolidados. Celebrada una vista, a la que no comparecieron los querellantes ni su abogado, y luego de considerar memorandos sometidos, el tribunal emitió resolución declarando sin lugar la solicitud de sentencia sumaria. Se basó en los razonamientos expuestos por los querellantes. A

solicitud de Puerto Rico Glass expedimos auto de *certiorari*.

Los Arts. 12 y 13 de la citada Ley Núm. 379 disponían de la manera siguiente para la fecha de la sentencia que desestimó la querella de 1967, según aparecen en 29 L.P.R.A. secs. 281 y 282:

"§ 281. —Renuncia de paga por tiempo extra, prohibida

Por la presente se declara irrenunciable la compensación adicional a base de tipo doble de salario que fijan las secs. 271 a 288 de este título para las horas extras de trabajo.

Será nula toda cláusula o estipulación en virtud de la cual convenga el empleado en renunciar al pago de la compensación adicional por horas extras que fijan las secs. 271 a 288 de este título.

§ 282. —Reclamaciones de empleados; daños; transacción

Todo empleado que reciba una compensación menor que la fijada en las secs. 271 a 288 de este título para horas regulares y horas extras de trabajo o para el período señalado para tomar los alimentos tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios, además de las costas, gastos y honorarios de abogados del procedimiento.

Estas reclamaciones podrán tramitarse de acuerdo con el procedimiento ordinario o el procedimiento de querella establecido en las secs. 3118 a 3132 del Título 32.

La reclamación judicial podrá establecerla uno o varios empleados por y a nombre suyo o de ellos y de otros empleados que estén en circunstancias similares; Disponiéndose, que después de iniciada judicialmente la reclamación, ésta podrá ser transigida entre las partes, con la intervención del Secretario del Trabajo o cualesquiera de los abogados del Departamento del Trabajo, designado por dicho Secretario y la aprobación de la Corte. El Secretario del Trabajo determinará administrativamente cuáles transacciones requerirán su intervención personal, fijando los criterios que regirán a esos efectos mediante reglamento u orden administrativa. Será nula toda transacción extrajudicial sobre el pago del salario correspondiente a las horas regulares, a las horas extras de trabajo, al período señalado para tomar los alimentos o sobre el pago de la suma igual a la recla-

mada que fijan las secs. 271 a 288 de este título por concepto de liquidación de daños y perjuicios; Disponiéndose, sin embargo, que será válida a los propósitos de las secs. 271 a 288 de este título, toda transacción que se verifique ante el Secretario del Trabajo o cualesquiera de los abogados del Departamento del Trabajo, designado por dicho Secretario."

La decisión de la controversia aquí planteada depende esencialmente de si hubo una transacción en relación con la querella del 1967. La aplicación de los transcritos Arts. 12 y 13, tiene necesariamente que depender de si hubo tal transacción. Si la hubo, fue nula por no haber intervenido el Secretario del Trabajo, y nula la sentencia que en ella se basó. Si no hubo transacción los Arts. 12 y 13 no juegan aquí papel alguno.

El desistimiento de los querellantes se produjo mediante un escrito que ellos titularon "Moción de Desistimiento" y que se acompañó de declaraciones de ellos autorizando expresamente el desistimiento y expresando detalladamente las razones para ello. La parte querellada expresó su conformidad al calce del escrito. Tuvo, por tanto, el alcance de una estipulación. Véase *Ballantine's Law Dictionary*, ed. 1969, pág. 1217. Se ha dicho que hay dos clases de estipulaciones: las que constituyen meras admisiones de hechos y dispensan por tanto el requisito de probar tales hechos, y las que reconocen derechos y tienen el alcance de una adjudicación respecto de tales derechos. Véanse *Moore* v. *Humphrey*, 247 N.C. 423, 101 S.E.2d 460, 467; *Thayer* v. *Federal Life Ins. Co.*, 217 Wis. 282, 258 N.W. 849. Una tercera clase que aquí no nos concierne, sería la que propone determinado curso de acción, como por ejemplo para que se celebre una conferencia antejuicio, o se someta una cuestión a un comisionado especial, o para que se admitan determinadas pruebas. En todos los casos la estipulación persigue evitar dilaciones, inconvenientes y gastos y su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica.

 Una vez hecha y aprobada por el tribunal la estipulación obliga a quienes la hacen y a las partes por ellos legalmente representadas. *Morse Boulger Destructor Co.* v. *Camden Fibre Mills, Inc.*, 239 F.2d 382 (3d Cir. Pa.); *Barletta* v. *Tribunal Superior*, 99 D.P.R. 379 (1970); *Díaz* v. *Tribunal Superior*, 93 D.P.R. 79, 88 (1966). La estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella. Debe interpretarse liberalmente, de manera consistente con la intención de las partes y el propósito de hacer justicia. En las jurisdicciones estatales norteamericanas se ha resuelto consistentemente que en caso de duda se adoptará aquella contención que sea más favorable a la parte a cuyo favor se hizo la estipulación. *Walsh* v. *Wallace*, 26 Nev. 299, 67 P. 914; *Firestone Tire & Rubber Co.* v. *Chispman*, 194 S.W.2d 609 (Texas Civ. App.); *State* v. *Rutland R. Light & P. Co.*, 85 Vt. 91, 81 A. 252. Parece juicioso que así sea y no vemos razón para apartarnos de esa doctrina.

 Una estipulación no implica, sin embargo y necesariamente, la existencia de una transacción. El Art. 13 de la Ley Núm. 379 requiere la aprobación del Secretario del Trabajo cuando se conviene en la transacción de una reclamación de salarios formulada judicialmente. No requiere, ni podría requerir, la aprobación por dicho funcionario de la adopción de una estipulación que reconozca determinados hechos como ciertos, o el derecho de una parte, o convenga adoptar determinadas medidas para la más pronta disposición de un asunto sometido a la consideración de un tribunal de justicia. Pretender tal cosa sería violentar el principio constitucional de separación de poderes, amén de introducir en los procesos judiciales un elemento dilatorio innecesario y destructivo de la fe en la capacidad de los jueces y en su sentido de rectitud.

 La transacción está definida en el Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821, que dice:

"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."

Señala Castán, *Derecho Civil Español, Común y Foral,* séptima edición, tomo 4, pág. 709, que ". . . la transacción es contrato *consensual,* porque se perfecciona por el mero consentimiento; bilateral o plurilateral, porque no se concibe sin obligaciones mutuas (renuncias a determinadas pretensiones, concesiones de muy variada índole) que contraen las partes en evitación del litigio, de tal modo que la obligación unilateral será renuncia, reconocimiento, allanamiento o cualquier otra cosa, pero no transacción; y *oneroso,* nunca gratuito, por análoga razón."

La transacción supone necesariamente que se asumen obligaciones recíprocas de dar, prometer o retener cada parte alguna cosa. La obligación que cada parte asume es a su vez la causa de la obligación de su contraria. Y supone además la transacción que la cuestión litigiosa es dudosa, sea porque los derechos de las partes son en sí dudosos, o porque las partes tienen dudas sobre su derecho. Manresa resume de la manera siguiente el contrato de transacción:

"Es accesorio, en el concepto especial que en el orden jurídico tiene dicho término, en cuanto supone una cuestión, litigiosa o no, anterior sobre una relación de derecho determinada, a cuya cuestión pone término, razón por la que alguno de los expositores de nuestro antiguo Derecho civil considera a la transacción *como* una verdadera novación de obligaciones anteriores que quedan extinguidas con ella. Es, además, consensual, porque dicho contrato se perfecciona con el mero consentimiento de las partes que lo celebran, surtiendo desde entonces todos los efectos jurídicos correspondientes. Es bilateral, toda vez que de su perfección surgen derechos y *obligaciones recíprocos para ambos contra-tantes;* y, por último, es también oneroso, no gratuito, pues si no se recibiera nada en compensación o a cambio de lo que cada una de las partes cede para conseguir su fin, se convertiría dicho contrato en una verdadera donación o en una renuncia.

En resumen, puede decirse que la transacción es un contrato consensual, recíproco y oneroso, por el cual las partes resuelven, mediante mutuas concesiones, una cuestión que les parece dudosa.

La mayoría de la doctrina ha estimado, en efecto, que es necesaria para la existencia de la transacción, una situación de incertidumbre o duda entre las partes, ya objetiva (cuando la relación jurídica o los derechos de las partes son dudosos), ya, más frecuentemente, subjetiva (cuando a las partes les parece dudoso su derecho)." (Manresa, *Comentarios al Código Civil Español*, ed. 1973, tomo 12, pág. 129.)

■ Analizada la situación aquí planteada con vista de los requisitos para la existencia de una transacción concluimos que la moción de desistimiento presentada por los querellantes y la expresión de la conformidad de la querellada no constituyeron una transacción. Los querellantes no tenían dudas de que durante el período cubierto por la querella se desempeñaron como administradores o ejecutivos; tampoco de que no tenían derecho a lo que reclamaban. No obtuvieron nada a cambio de su desistimiento, por lo que su decisión constituyó un acto unilateral de voluntad. No puede argüirse que la solicitud de honorarios para su abogado fuera una condición impuesta por ellos para desistir. De hecho, ni lo solicitaron en la súplica de su moción ni se hizo pronunciamiento alguno sobre ello en la sentencia. El pago hecho por la querellada puede considerarse como una liberalidad de su parte a la que no estaba obligada. Por no tratarse en este caso de una transacción era innecesaria la intervención del Secretario del Trabajo o de abogados de ese Departamento.

*Amer. Col. Broad. Corp.* v. *Tribunal Superior*, supra, planteó una situación de hechos distinta a la que ahora nos ocupa. En *American Colonial* se trataba, al igual que aquí, de una reclamación por concepto de horas extras trabajadas y no pagadas, más compensación por vacaciones y despido injustificado. Se reclamaron $33,157.32 más una suma igual como liquidación de daños y perjuicios, honorarios de abogado y cos-

tas. Se dictó sentencia basada en una estipulación en que las partes—no los querellantes únicamente, como ocurre aquí—llegaron a la "conclusión" de que lo adeudado por el patrono era la cantidad de $3,000 por horas extras, más la correspondiente penalidad, y $1,200 para honorarios de abogado. El Secretario del Trabajo no intervino.

Cuando, diez y siete meses más tarde, los mismos querellantes formularon una nueva reclamación contra el mismo patrono por los mismos conceptos de la anterior, se planteó como aquí la defensa de cosa juzgada. Confirmamos la resolución que se negó a desestimar la nueva querella. Concluimos que la estipulación en que se basó la sentencia en el primer caso constituyó una transacción. A diferencia del caso ante nuestra consideración, en *American Colonial* las partes se hicieron concesiones mutuas. Los querellantes desistieron de parte de sus reclamaciones por horas extras y de reclamar por vacaciones y despido, y la parte querellada se obligó a pagar *a ellos* determinada cantidad de dinero. Aquí los querellantes no recibieron nada. En *American Colonial* recibieron $6,000.

Tiene gran importancia en el caso ante nos el hecho de que los querellantes prestaron declaraciones individualmente en que expusieron los hechos en que se basaban para concluir que eran administradores o ejecutivos. De haber prestado testimonio en corte abierta exponiendo lo mismo que en sus declaraciones escritas a nadie se le hubiese ocurrido que era menester paralizar los procedimientos hasta obtener la comparecencia de un representante del Secretario del Trabajo para que éste hiciera la determinación de si eran o no administradores o ejecutivos. Tal pretensión equivaldría al absurdo de despojar al tribunal de su facultad juzgadora y convertirle en un mero asentidor obligado del fallo del representante del Secretario del Trabajo.

Al evitarse la comparecencia personal de cada querellante para exponer oralmente y repetir lo que hicieron constar por escrito se cumplió el principio de economía de tiempo y de

gastos, propósito esencial de nuestro Derecho procesal. Véanse *Lugo Ortiz* v. *Ferrer*, 85 D.P.R. 862 (1962) y *Sucesión Guerra* v. *Sánchez*, 71 D.P.R. 807 (1950).

*Se dejará sin efecto la resolución del Tribunal Superior, Sala de Bayamón, dictada en los casos consolidados CS71-5011 y CS71-5012, de 14 de marzo de 1973, negándose a desestimar las reclamaciones de aquellos querellantes que figuraron como tales en la querella presentada ante el Tribunal Superior, Sala de San Juan, caso núm. 67-2554, y resuelto mediante sentencia por desistimiento de fecha 9 de septiembre de 1969, y en su lugar se ordenará la desestimación de dichas querellas. Se devolverán los autos originales al tribunal recurrido para ulteriores procedimientos respecto de aquellos querellantes no afectados por los pronunciamientos hechos en esta opinión.*

El Juez Presidente, Señor Trías Monge, no intervino.