Gilberto Gierbolini, Juez Ponente
*1206 TEXTO COMPLETO DE LA SENTENCIA
El demandado-recurrente en el caso de epígrafe acude a este Trihunal y nos solicita la revocación de la Resolución emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 13 de diciembre de 1995 y cuya copia de la notificación fue archivada en autos el 15 de diciembre de 1995. En dicha Resolución, el tribunal de instancia resolvió a favor del demandante-recurrido, José Manuel Juarbe Alicea, en su capacidad de tutor de Jovita Alicea Gerena, al resolver que la parte demandada-recurrente, Juarbe's Auto Sales, Inc., está impedida de alegar la defensa de cosa juzgada, por haber llegado a un acuerdo con el demandante y por sus propios actos. Luego, deteminar los hechos del caso, la posición de las partes contenida en sus respectivos escritos, así como el derecho aplicable, hemos determinado que procede CONFIRMAR.
I
Una relación sucinta de los hechos determinados por el Tribunal a quo y que da paso a la presente controversia es la siguiente. El 11 de abril de 1968 quedó disuelto el matrimonio compuesto por Jovita Alicea Gerena (Doña Jovita) y Bienvenido Juarbe Rosado (Don Bienvenido) mediante sentencia judicial. Doña Jovita fue declarada incapaz judicialmente el 7 de agosto de 1970. El 13 de julio de 1973, Don Bienvenido presentó demanda sobre liquidación de los bienes adquiridos por la sociedad legal de gananciales compuesta por éste y por Doña Jovita mientras estuvieron casados. Las partes llegaron a un acuerdo en cuanto a la división de los bienes, con la anuencia del tribunal, tal como lo requería la incapacidad de Doña Jovita. Como parte de dicho acuerdo, Doña Jovita obtuvo un pagaré por $172,961.16 al 7 1/2 por ciento de intereses anual, garantizado con hipoteca sobre una finca propiedad de Juarbe's Auto Sales, Inc. (Juarbe's).
El 10 de febrero de 1982, José Manuel Juarbe Alicea (Tutor), en representación de Doña Jovita, presentó una acción en cobro de dinero, civil número 82-736, para satisfacer la deuda representada por el mencionado pagaré. El 21 de mayo de 1985, el tribunal emitió sentencia en la que desestimó el caso bajo la Regla 39.2 (b), por falta de trámite alguno durante 6 meses. Posteriormente, el 15 de marzo de 1991, el Tutor, en representación de Doña Jovita, presentó una segunda demanda en cobro de dinero y ejecución de hipoteca, número KCD-91-0617. El 14 de noviembre de 1991 el demandado contestó la demanda aceptando la totalidad de las alegaciones. Además, solicitó auxilio del tribunal a los efectos de que permitiera vender la finca hipotecada para de ese modo quedar en condiciones de lograr una transacción. De esta forma, el 19 de febrero de 1992, el Tutor, representante de Doña Jovita; Don Bienvenido, como presidente de Juarbe's; y Pego Realty Corp. (Pego) a través de su presidente René Hernández Arencipio, suscribieron un escrito titulado Estipulación de Transacción y Contrato de Compraventa. En el mismo, Juarbe's expresa su intención de transigir el pleito incoado en su contra por Doña Jovita. A esos efectos las partes acordaron, en lo pertinente a la presente controversia, que Pego compraría a Juarbe's la finca en cuestión por $264,466.77. De la cantidad del precio estipulado de venta, Pego habría de satisfacer a Doña Jovita la suma de $200,000.00 a cambio de la entrega del pagaré que funge como prueba de la deuda, debidamente endosado. Dicho acuerdo estaría sujeto a que, luego del otorgamiento, el Tutor solicitara la autorización judicial necesaria para suplementar el consentimiento de Doña Jovita. El 10 de agosto de 1992 el tribunal desestimó el pleito por falta de trámite alguno durante 6 meses. En esa misma fecha, Doña Jovita, mediante el Tutor, presentó moción en la que informó que las partes estaban en negociaciones para transigir el pleito y que de tales conversaciones surgió la Estipulación de Transacción y Contrato de Compraventa, que contenía la transacción acordada por las partes; además informó que el Tutor había solicitado la aprobación de dicha estipulación al tribunal. Como consecuencia de esa moción, el 19 de agosto de 1992 el tribunal dejó sin efecto la sentencia desestimando la demanda. Más tarde, el 22 de abril de 1993, y en respuesta a dos órdenes del tribunal para, que informaran el estado procesal del caso, Juarbe's compareció y sostuvo que ya habían transigido el mismo. Después de tal comparecencia, el 30 de abril de 1993, el tribunal resolvió desestimar el pleito, tomando como base dicha representación.
Posteriormente, Doña Jovita, a través de su Tutor, instó la acción objeto de la presente revisión, número KCD-94-0094, ante el tribunal a quo el 18 de febrero de 1994. Juarbe's solicitó sentencia sumaria basado en la doctrina de cosa juzgada. En Resolución del 13 de diciembre del 1995, el tribunal a quo resolvió que no es de aplicación a los hechos de este caso la doctrina de cosa juzgada porque hubo una novación de la obligación en virtud de la Estipulación de Transacción y Contrato de Compraventa otorgado por las partes el 19 de febrero de 1992, faltando solamente la correspondiente *1207 autorización judicial para la ejecución del mismo; y porque Juarbe's había actuado contra sus propios actos. Juarbe's comparece ante nos para que revisemos la Resolución emitida por el Tribunal de Primera Instancia.
Nos toca resolver si, como cuestión de derecho, la doctrina de cosa juzgada es aplicable a los hechos de este caso. Resolvemos que no es aplicable.
II
En nuestro ordenamiento civil, la doctrina de cosa juzgada está tipificada en el Artículo 1204 del Código Civil, 31 L.P.R.A. 3343 y en el Artículo 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 1793, Rodríguez Rodríguez v. Colberg Comas, 92 J.T.S. 102. En lo pertinente a la controversia de autos, el Código Civil dispone:

"Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

Para que la presunción de cosa juzgada surta efecto en otro juicio es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de-los litigantes y la calidad con que lo fueron". Código Civil, Artículo 1204, 31 L.P.R.A. 3343.
Asimismo, el Código de Enjuiciamiento Civil señala:
"...el fallo o decreto, en cuanto a la materia directamente juzgada, será concluyente entre las partes y sus sucesores en interés por título adquirido posteriormente al comienzo de la acción o del procedimiento especial, las cuales estuvieren litigando por la misma cosa, bajo el mismo título y en el mismo carácter..." Código de Enjuiciamiento Civil, Artículo 421, 31 L.P.R.A. 1793.
La doctrina de cosa juzgada responde al propósito de proteger a los litigantes de tener que defender o probar sus reclamaciones en repetidas ocasiones cuando trata sobre la misma controversia, promover la economía judicial y administrativa al evitar litigios innecesarios, y evitar decisiones inconsistentes, Rodríguez v. Rodríguez, supra; Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978). La aplicación de la doctrina de cosa juzgada presupone que entre el pleito anterior y el posterior, en el cual queda interpuesta la defensa, exista identidad de cosa u objeto, identidad de causa, identidad de personas y legitimación, y una sentencia final y concluyente entre las partes, P.I.P. v. C.E.E., 120 D.P.R. 580; Rodríguez v. Rodríguez, supra; Pagán v. Hernández, supra; Lausell Marxuach v. Díaz de Yáñes, 103 D.P.R. 533 (1975).
La identidad de cosas queda verificada cuando, atendiendo al género de cosas que se trate, haya igualdad de título y de obligación, Manresa, T. 8, Volumen II. En cuanto a la identidad de causa señala Mercado Riera v. Mercado Riera, 100 D.P.R. 940 (1972), citando a Manresa, supra:

"Para los efectos de la cosa juzgada, la palabra causa tiene un sentido que no es de razón o motivo de un contrato o acto jurídico. Significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes."

Con respecto a la identidad de personas que requiere la doctrina de cosa juzgada, el propio Código establece:
"Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas." Código Civil, Artículo 1204, 31 L.P.R.A. 3343.
Por último, el requerimiento de firmeza de la sentencia anterior en la que tiene base la defensa de cosa juzgada supone que "el fallo ha de ser firme, ya por no ser susceptible de recurso... por no haberse interpuesto a su debido tiempo el procedente, ya porque hubiera sido desestimado el que se *1208 formulase." Manresa, supra, páginas 286-87.
El efecto legal que produce la aplicación de la doctrina de cosa juzgada es impedir que sea litigado en un nuevo pleito lo ya adjudicado en un pleito anterior. En tal sentido "...la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas con propiedad en la acción anterior." Pagan Hernández v. U.P.R., supra. No obstante, el Tribunal Supremo "ha rechazado la aplicación automática de la doctrina de cosa juzgada; en especial la que surte como efecto de una desestimación por inactividad, entre otras, por la política judicial de que los casos se ventilen en sus méritos," Banco de la Vivienda de Puerto Rico v. Carlo Ortiz, 92 J.T.S. 76. Asimismo, está resuelto que la presunción de cosa juzgada no aplica inflexiblemente cuando de hacerlo quedaría derrotado un principio de política pública o los fines de la justicia. Véase Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246 (1988); P.I.P. v. C.E.E., 120 D.P.R. 580 (1988); G.A.C. Fin. Corp. v. Rodríguez, 102 D.P.R. 213 (1974); Millón v. Caribe Motors Corp., 83 D.P.R. 494 (1961); Pérez v. Bauzá, 83 D.P.R. 220 (1961).
En el presente caso, la aplicación de la doctrina de cosa juzgada ocurriría por efecto de una desestimación por inactividad provocada por Juarbe's, en la medida en que al éste informar que había llegado a un acuerdo de Transacción y que no veía necesidad de continuar con el pleito, movió al tribunal a desestimar el mismo y a la otra parte a abstenerse de continuar el litigio. Aplicar la doctrina de cosa juzgada en este contexto, en el cual todo indicaba la existencia de una transacción, provocaría un fracaso de la justicia.
La estipulación de transacción y contrato de compraventa suscrita por Bienvenido Juarbe en representación de Juarbe's y por Doña Jovita, representada por su Tutor, ciertamente, constituyó un contrato de transacción. "El contrato de transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado", Código Civil, Artículo 1709, 31 L.P.R.A. 4821. Como todo contrato, el contrato de transacción debe contener consentimiento, objeto y causa. Es decir, que el mismo tiene carácter consensual, su objeto es la controversia entre las partes y su causa es la eliminación de tal controversia mediante concesiones recíprocas, Neca Mortgage Corp. v. A & W Developers S.E. y otros, 95 J.T.S. 10. Además, este contrato supone la existencia de tres elementos; debe existir una relación jurídica incierta o controvertida, la intención de eliminar la incertidumbre y la reciprocidad de concesiones entre las partes, General Electric v. Southern, 93 J.T.S. 27; Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503 (1988).
La transacción tendrá carácter novatorio cuando la situación anterior a la controversia es sustituida por la situación jurídica que origina la transacción; es decir, cuando por voluntad de las partes el negocio transaccional elimina, sustituye o modifica la anterior relación incierta, García v. The Commonwealth Ins. Co., 118 D.P.R. 380 (1987).
El contrato de transacción puede ser judicial o extrajudicial. Judicial es el que acontece cuando, comenzado un pleito las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso. De otro lado, ocurre una transacción extrajudicial si antes de iniciado el litigio, las partes acuerdan eliminar la controversia mediante acuerdo o, aún estando el pleito pendiente, las partes acuerdan una transacción sin la intervención del tribunal, Neca Mortgage Corp. v. A & W Developers S.E. y otros, supra.
En el caso ante nos, las partes, al igual que el representante de Pego Realty Corp., suscribieron un escrito titulado Estipulación de Transacción y Contrato de Compraventa. Apéndice, pág. 82. Ello constituyó un contrato de transacción. El propósito perseguido por las partes de este caso era transigir el pleito pendiente entre ambos para, de ese modo, acabar con el mismo. En dicho contrato, las partes concretaron su intención de eliminar la incertidumbre en la que estaban sus derechos por medio de la reciprocidad de concesiones. En tal sentido acordaron que Juarbe's vendería a Pego la finca que garantizaba el pagaré del cual Doña Jovita era tenedora, al precio de $264,466.77. De dicha cantidad, Pego pagaría a Doña Jovita $200,000 a cambio y en consideración a la entrega de dicho pagaré endosado. De este modo, la transacción cobró un carácter novatorio, en tanto que el negocio transaccional sustituyó la relación incierta, García v. The Commonwealth Ins. Co., supra. La transacción ocurrida en este caso fue extrajudicial pues, estando el pleito pendiente, las partes llegaron *1209 a un acuerdo sin la intervención del tribunal. Este acuerdo fue señalado al tribunal por el propio Juarbe's en su moción en cumplimiento de orden del 22 de abril de 1993, Apéndice, página 78. Fue a base de tal información que el tribunal desestimó el segundo pleito instado por Doña Jovita. Es claro, además, que el reconocimiento de las. negociaciones en curso tampoco promovió la comparecencia de la parte demandante. De este modo, Juarbe's quedó impedido, por sus propios actos, de levantar la defensa de cosa juzgada.
La norma de que a nadie le es lícito ir contra los propios actos tiene fundamento en el principio general de derecho que ordena proceder de buena fe en la vida jurídica, Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345 (1984). Los presupuestos necesarios para la aplicación de la norma jurídica de que nadie puede ir contra sus propios actos son la existencia de una conducta determinada de un sujeto; que haya engendrado una situación contraria a la realidad, o sea, aparente y mediante tal apariencia, susceptible de influir en la conducta de los demás; y que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya actuado de forma que le causaría un peijuicio si su confianza quedara defraudada, Int. General Electric v. Concrete Builders, 104 D.P.R. 871 (1976). Tales elementos están presentes en el caso bajo nuestra consideración. Veamos.
Al momento de la presentación del segundo de los pleitos incoados por Doña Jovita, a través de su tutor, el 15 de marzo de 1991, Juarbe's no presentó la defensa de cosa juzgada. Por el contrario, aceptó la totalidad de las alegaciones de la demanda y solicitó que el tribunal permitiera vender la finca para, de una vez, lograr la transacción del pleito, Apéndice, página 71. Asimismo, el 22 de abril de 1993 compareció ante el tribunal, mediante Moción en cumplimiento de orden, Apéndice página 78, para informar que "ya se había transigido el caso por $200,000, Small Business había aceptado $50,000 por su crédito hipotecario (véase carta) y el comprador de la propiedad que mi cliente tiene hipotecada estaba dispuesto a pagar $280,000, lo que significa que no había necesidad de continuar con el pleito". Además, expresó que "[s]iendo la parte demandante la que debe mostrar mayor interés en dejar resuelto este asunto, estamos en la mejor disposición de firmar cualquier documento por virtud del cual, en armonía a las condiciones originalmente discutidas y aceptadas, pueda ponerse fin a este caso en el cual a habido muy poca controversia." La sentencia emitida por el juez de instancia guarda una estrecha relación con tal comparecencia. La misma dispone:
"En consideración a lo señalado por la parte demandada y ante la incomparecencia de la parte demandante, a pesar de habérsele requerido a ello, se desestima la presente causa de acción y se ordena el archivo y sobreseimiento de la misma.", apéndice página 77-A.
Evidentemente, el archivo del caso es producto de la comparecencia de Juarbe's, en la que señalaba que existía un acuerdo que hacía innecesaria la continuación del pleito. Los actos de Juarbe's crearon las condiciones para la producción de la sentencia a la que ahora alude para solicitar la aplicación de la doctrina de la cosa juzgada. La conducta de Juarbe's, consistente en llevar el mensaje de que existía un contrato de transacción, engendró la apariencia de que era innecesaria la continuación del pleito, desalentó la comparecencia de la otra parte y provocó el fallo desestimatorio del tribunal. Cumplidos, de este modo, los elementos de la norma de no ir contra los propios actos, Juarbe's quedó impedido, por sus acciones, de levantar la defensa de cosa juzgada. Permitir la aplicación de tal defensa traicionaría la buena fe patente en el hecho de que la parte demandante accediera a llegar a un acuerdo de transacción; contravendría la política judicial de que los casos sean resueltos en sus méritos, Banco de la Vivienda de Puerto Rico v. Carlo Ortiz, supra; y provocaría un fracaso de la justicia por cuanto el fallo que, bajo el argumento de Juarbe's, constituye la sentencia final requerida para aplicar la doctrina de cosa juzgada, fue producido por causa y en consideración al acuerdo de transacción informado por él mismo.
Por los fundamentos expuestos, EXPEDIMOS el auto de certiorari solicitado y CONFIRMAMOS la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*1210 ESCOLIO 97 DTA 85
1. La diferencia del contrato de transacción con una estipulación es que el primero finaliza el pleito vigente. Puerto Rico Glass v. Tribunal, 103 D.P.R. 223 (1975). El acuerdo hecho en este caso resolvía precisamente la única controversia existente en el pleito, el pago de lo adeudado por Juarbe.