Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MARISOL VÁZQUEZ FIGUEROA T/C/C MARISOL VÁZQUEZ<br>Parte Apelada<br><br>v.<br><br>CARMELO DE LEÓN CRUZ T/C/C CARMELO DE LEÓN<br>Parte Apelante | KLAN202500472 | Apelación procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Civil Núm.:<br>GM2022CV00118<br><br>Sobre:<br>Divorcio |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de agosto de 2025.

Comparece el Sr. Carmelo De León Cruz (Sr. De León o apelante) mediante recurso de *Apelación,* presentado el 27 de mayo de 2025. Solicita que revoquemos la *Sentencia* emitida el 21 de marzo de 2025, notificada el 24 de igual mes y fecha, por el Tribunal de Primera Instancia (TPI), Sala Superior de Guayama. Mediante el referido dictamen, el TPI acogió el acuerdo presentado por el Sr. De León y la Sra. Marisol Vázquez Figueroa (Sra. Vázquez o parte apelada) sobre liquidación de bienes gananciales y, entre otros remedios, adjudicó en partes iguales el balance de una cuenta IRA Fácil con la institución Oriental Bank.

El 24 de junio de 2024, la Sra. Vázquez presentó su alegato en oposición.

Por los fundamentos que expondremos a continuación, se **CONFIRMA** la Sentencia apelada.

## I.

El 24 de febrero de 2022, la Sra. Vázquez Figueroa presentó una *Demanda* sobre liquidación de bienes gananciales en contra del

Sr. De León.[1] Alegó que estuvieron casados entre sí por veintinueve (29) años y que el matrimonio fue disuelto el 17 de febrero de 2021, mediante *Sentencia* de divorcio dictada en el caso civil núm. GM2020RF00284. Aludió que, durante la vigencia del matrimonio, las partes adquirieron bienes muebles e inmuebles y deudas a favor de la sociedad legal de gananciales. Por ello, solicitó que se realizara un inventario y avalúo de los bienes, de forma que pudieran dividirse y adjudicar las participaciones y créditos correspondientes.

El Sr. De León en su *Contestación a la demanda*, admitió la existencia de bienes y deudas gananciales sujetos a liquidación y solicitó que se ordenara el inventario y avalúo de estos.[2]

Como parte del descubrimiento de prueba, el 14 de junio de 2024, la Sra. Vázquez presentó una *Moción en Solicitud de Órdenes*[3] en la que pidió se emitieran órdenes a varias instituciones bancarias para obtener los estados mensuales de las cuentas a nombre del Sr. De León.[4]

El 24 de julio de 2024, se celebró la conferencia con antelación al juicio. En esta, luego de las partes presentar sus argumentos y expresar que estaban próximos a alcanzar un acuerdo, el TPI les concedió un término de treinta (30) días para presentar la correspondiente estipulación, así como el asunto en controversia a dilucidarse sin la necesidad de celebración de juicio.[5] Ante el incumplimiento con lo ordenado, el 12 de septiembre de 2024, el TPI concedió un término final[6] a las partes para presentar una moción conjunta con estipulaciones de hechos y controversias, conforme ordenado en la vista del 24 de julio de 2024. No habiéndose

---

[1] *Demanda,* Apéndice V del recurso, pág. 9-12.

[2] *Contestación a la demanda,* Apéndice VI del recurso, pág. 13.

[3] Véase, Entrada Núm. 16 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[4] El 29 de julio de 2024, el TPI emitió las órdenes correspondientes, entre éstas una orden dirigida a Oriental Bank para que entregara a la Sra. Vázquez los estados de cuenta correspondientes al periodo de octubre de 2019 a junio de 2021 de la cuenta IRA Fácil 6196540114 la cual está a nombre del Sr. De León.

[5] Véase, *Minuta,* Entrada 31 de SUMAC.

[6] Entrada núm. 35 en SUMAC.

presentado la estipulación por las partes, el TPI señaló el juicio en su fondo para el 20 de marzo de 2025 y ordenó a las partes presentar prueba conjunta diez (10) días antes del juicio.[7]

Llegado el día del juicio, ambas partes comparecieron representadas por sus respectivos abogados. Conforme surge de la *Minuta*[8] de esa vista, el Tribunal tomó juramento a las partes y estas informaron que alcanzaron un acuerdo por estipulación el cual estaba pendiente de firmarse. Manifestó el tribunal que existía controversia al diferencial a ser adjudicado a cada parte de la cuenta IRA Fácil. Al respecto, la representación legal de la Sra. Vázquez indicó que presentaría una estipulación para que el Tribunal emitiera la correspondiente sentencia. El abogado del Sr. De León solicitó al TPI que realizara el cálculo. A continuación, el TPI examinó a las partes en relación con su decisión sobre el acuerdo alcanzado y éstos informaron que se allanaban al mismo de forma libre y voluntaria. Los abogados de las partes acordaron presentar la estipulación ese mismo día a través de SUMAC.

Al día siguiente, las partes presentaron *Moción en Conjunto en Torno a Hechos, Inventario de Activos y Pasivos [y] Adjudicaciones [y] Otros Extremos* (en adelante Moción Conjunta).[9] En la primera parte, las partes detallaron el inventario de activos, pasivos y las adjudicaciones sobre las cuales no había controversia. Respecto a la cuenta IRA Fácil, las partes expusieron lo siguiente:

> 8. Conforme surge de Certificación de la cuenta IRA Fácil con la Institución Bancaria Oriental Bank número 619540114 la cantidad depositada a dicha cuenta fue por $143,269.00. De dicha cantidad la Sociedad Legal de Bienes Gananciales utilizó varias cantidades de dinero para el pago de algunas cuentas y gastos de construcción. **Después de descontar dichos gastos se certifica balance en la cantidad de OCHENTA Y CINCO MIL D[Ó]LARES ($85,000.00) a la fecha del divorcio.** (Énfasis nuestro).

---

[7] Entrada Núm. 56 en SUMAC.
[8] Apéndice XIII del recurso, págs. 32-33.
[9] Apéndice XIV del recurso, págs. 34-37.

En la segunda parte de la Moción Conjunta, las partes detallaron la adjudicación y liquidación de la sociedad legal de bienes gananciales. En cuanto a la cuenta IRA Fácil, estos acordaron lo siguiente:

> [S]e certifica balance en la cantidad de **OCHENTA Y CINCO MIL D[Ó]LARES ($85,000.00);** a ser dividido entre las partes de epígrafe en partes iguales, entiéndase en un cincuenta por ciento (50%) cada uno. **La cantidad de dinero a ser adjudicada de la cuenta antes descrita, la cual está a nombre exclusivo del demandado, a favor de la demandante es por la cantidad de cuarenta y dos mil quinientos dólares ($42,500).** (Énfasis nuestro).

Al final del escrito, las partes detallaron como única controversia de derecho a ser resuelta, el asunto de la IRA Fácil, sobre el cual expresaron lo siguiente:

> 16. Se solicita de este Honorable Tribunal, que, **después de adjudicarse los créditos correspondientes y tomando en consideración las estipulaciones entre las partes antes desglosadas, determine las cantidades de dinero que le serán adjudicadas a cada una de las partes de epígrafe de la cuenta IRA Fácil** con la Institución Bancaria Oriental Bank número 619540114, única fuente de dinero líquido de la Sociedad Legal de Gananciales. (Énfasis nuestro).

En virtud de lo anterior, solicitaron al TPI que una vez resolviera dicha controversia, emitiera sentencia.

El 21 de marzo de 2025, el TPI emitió la *Sentencia[10]* apelada. En virtud de esta, el foro apelado acogió la estipulación sometida por las partes tal cual fue presentada y la incorporó a la sentencia. Respecto a la adjudicación del balance de la cuenta IRA Fácil, el TPI consignó lo siguiente:

> 5. Conforme surge de la Certificación de la cuenta IRA Fácil con la Institución Bancaria Oriental Bank número 6196540114 la cantidad depositada a dicha cuenta fue por $143,269.00. De dicha cantidad la Sociedad Legal de Bienes Gananciales utilizó varias cantidades de dinero para el pago de algunas cuentas y gastos de construcción. Después de descontar dichos gastos se certifica balance en la cantidad de OCHENTA Y CINCO MIL DOLARES $85,000.00; a ser dividido entre las partes de epígrafe en partes iguales, entiéndase en un

---

[10] Apéndice I del recurso, págs. 1-2.

cincuenta por ciento (50%) cada uno. La cantidad de dinero a ser adjudicada de la cuenta antes descrita, la cual está a nombre exclusivo de la Parte Demandada, a favor de la Parte Demandante es por la cantidad de cuarenta y dos mil quinientos dólares ($42,500.00).[11]

En virtud de los términos y condiciones acordados por las partes, el TPI dio por culminada la liquidación de los bienes gananciales y ordenó a que se realizara la transmisión a favor de la Sra. Vázquez por un total de $43,422.90[12].

El 3 de abril de 2025, el Sr. De León presentó una *Moción de Reconsideración*[13] en la que, en esencia, arguyó que no estaba de acuerdo con la división de la cuenta IRA Fácil consignada en la *Sentencia*. Según alegó, la división del 50% del balance de la cuenta es incorrecta y argumentó que la misma debió realizarse sobre una base de $60,000.00, y no $85,000.00, por lo que la cantidad correcta a pagarle a la Sra. Vázquez era de $30,000.00. Junto con su solicitud, el Sr. De León acompañó una *Declaración Jurada*[14] en la que autorizaba a su abogado a ofrecer a la Sra. Vázquez una propuesta de pago por la cantidad de $30,000.00, por ser "la suma que consider[a] justa del remanente obtenido luego de los gastos debitados a la cuenta IRA Fácil de $143,269.00."[15] Reiteró que la controversia es sobre el remanente por el cual se calculó el pago a favor de la Sra. Vázquez. Por ello, solicitó se acogiera la reconsideración y se rectificara la base divisible de la IRA Fácil. El Sr. De León no acompañó evidencia para sustentar su reclamo.

Oportunamente, la Sra. Vázquez presentó una *Moción en Cumplimiento de Orden [y] Oposición a Reconsideración*.[16] En esencia, arguyó que el cálculo realizado por el foro de instancia es

---

[11] *Íd.*, pág. 2.
[12] Conforme surge de la sentencia apelada, el total de $43,422.90 se detalla como sigue: $42,500.00 de la Cuenta IRA Fácil y $922.90 de la cuenta de Banco Popular de Puerto Rico.
[13] Apéndice II del recurso, pág. 3-5.
[14] *Íd.*, pág. 5.
[15] *Íd.*
[16] Apéndice XV del recurso, pág. 38-39.

correcto y compatible con las estipulaciones suscritas por las partes y que el Sr. De León no presentó evidencia para sostener la cantidad base que alega correcta. Puntualizó que lo solicitado por el Sr. De León sin ningún tipo de evidencia que lo apoye resulta en una solicitud frívola y arbitraria.

El 30 de abril de 2025, el TPI declaró No Ha Lugar a la solicitud de reconsideración.[17]

Inconforme con la determinación, el 27 de mayo de 2025, el Sr. De León acudió ante nos e hizo el siguiente señalamiento de error:

> Abusó de su discreción el Honorable Tribunal de Primera Instancia al no celebrar una vista evidenciaria para determinar si hubo un error en el cálculo de la base de la IRA Fácil, por lo que, el consentimiento del Sr. De León estuvo viciado, de manera tal que, justifique la rectificación de dicha cuantía, según lo dispone el Código Civil de Puerto Rico de 2020.

Alegó que el TPI debió celebrar una vista evidenciaria para auscultar si hubo un vicio en su consentimiento al acordar la estipulación transcrita en el acápite número 5 de la *Sentencia* apelada. Arguyó que el TPI debió examinar la base de la cuenta IRA Fácil, según los estados de cuenta y, si se cometió el error, realizar la rectificación de la base para hacer la adjudicación que corresponde.

El 24 de junio de 2025, la Sra. Vázquez presentó una *Oposición a apelación civil.* Alegó que la estipulación en controversia cumplió con todos los requisitos legales y procesales y que ésta reflejaba la libre voluntad del Sr. De León. Argumentó que éste no podía retractarse una transacción judicial por la mera alegación de error por una de las partes, sin evidencia de que dicho error hubiese afectado los elementos esenciales del contrato. Por último, solicitó

---

[17] Apéndice III del recurso, pág. 6.

que se le impusiera al apelante el pago de honorarios por temeridad en virtud de la Regla 44.1(d) de Procedimiento Civil.

**II.**

Las estipulaciones no son un sinónimo de transacción, por lo que, una estipulación no implica necesariamente la existencia de un contrato de transacción.[18] Sólo cuando una estipulación cumpla con los elementos esenciales de un contrato de transacción, podremos considerarla como tal.[19]

En nuestro ordenamiento jurídico se han reconocido tres clases de estipulaciones, a saber: 1) las estipulaciones de hechos, 2) las que reconocen derechos y tienen el alcance de una adjudicación sobre tales derechos, y 3) las de índole procesal.[20]

Al examinar la naturaleza de las estipulaciones hemos expresado que "[l]a estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella".[21] Éstas "persigue[n] evitar dilaciones, inconvenientes y gastos y su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica".[22] Como norma general, un juez debe aceptar los convenios y las estipulaciones que las partes presenten.[23] Una vez el tribunal aprueba una estipulación, mediante la cual se pone término a un pleito o se resuelve un incidente dentro éste, ésta obliga a las partes y tiene el efecto de cosa juzgada.[24]

Por otro lado, el contrato de transacción es un "acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a

---

[18] *PR Glass Corp. v. Tribunal Superior,* 103 DPR 223, 231 (1975).
[19] *Mun. San Juan v. Prof. Research,* 171 DPR 219, 247 (2007).
[20] *PR Glass Corp. v. Tribunal Superior,* 103 DPR 223, 230 (1975).
[21] *PR Glass Corp. v. Tribunal Superior,* supra, pág. 231. Véase, además: *Pueblo v. Suárez Alers,* 167 DPR 850, 861 (2006); *Díaz Ayala et al. v. ELA,* 153 DPR 675, 691 (2001).
[22] *PR Glass Corp. v. Tribunal Superior,* supra, pág. 230.
[23] *Rodríguez Rosado v. Zayas Martínez,* 133 DPR 406, 410 (1993).
[24] *Íd.*

uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio". (Citas omitidas).[25]

En nuestro ordenamiento jurídico existen dos (2) clases de contratos de transacción: el judicial y el extrajudicial. Si las partes acuerdan eliminar la controversia mediante un acuerdo antes de comenzar el pleito, se trata de un contrato de transacción extrajudicial.[26] De otro lado, si luego de haber comenzado un pleito, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, se trata de un contrato de transacción judicial que tiene el efecto de terminar el pleito.[27]

Los contratos de transacción "produce[n] los efectos de la cosa juzgada".[28] Por eso, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno.[29] En términos generales, toda transacción supone que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y optan por resolver dichas diferencias mediante mutuas concesiones.[30]

Como todo contrato, un acuerdo transaccional debe contener objeto, consentimiento y causa.[31] Sobre la causa de un contrato de transacción, nuestro Alto Foro ha expresado que "[e]n conjunto, el litigio y las recíprocas concesiones constituyen los elementos de la causa".[32]

---

[25] *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006); *Mun. San Juan v. Prof. Research*, supra; *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci,* 147 DPR 1, 5 (1998).
[26] *Íd.*
[27] *Íd.*, citando a J.R. Vélez Torres, Curso de Derecho Civil, San Juan, Ed. Rev. Jur. U.I.A.P.R., 1990, T. IV, Vol. II, pág. 498.
[28] 31 LPRA sec. 10644.
[29] *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).
[30] *Citibank v. Dependable Ins. Co., Inc.,* 121 DPR 503, 512 (1988); *Sucn. Román v. Shelga Corp.,* 111 DPR 782, 791 (1981).
[31] Art. 1237 del Código Civil, 31 LPRA sec. 9971.
[32] *López Tristani v. Maldonado Carrero*, supra, pág. 857, citando a E. López de Barba, *El contrato de transacción, su resolución por incumplimiento*, Murcia, Eds. Laborum, 2001, pág. 78.

En armonía con lo anterior, en todo contrato de transacción, "[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio".[33]

Nuestro Tribunal Supremo en *Mun. San Juan v. Prof. Research*, supra, citando a Santos Briz, indica que la "reciprocidad en las prestaciones es la base indispensable de este contrato".[34] Por lo tanto, es necesario que las partes en este tipo de contrato "sacrifiquen y concedan al mismo tiempo alguna cosa en función de la superación del litigio sobre la cosa controvertida".[35] Es por ello que, "[l]a consecuencia inmediata será que a falta de recíprocas concesiones no estaremos ante una transacción por falta de causa".[36]

En resumen, al determinar si una estipulación cumple con los elementos de un contrato de transacción, es esencial examinar si las partes dispusieron de algún término a un litigio mediante concesiones recíprocas. Estas "concesiones ... pueden ser de la más diversa índole; lo fundamental es que sean mutuas".[37] En ausencia de concesiones recíprocas, no existirá un contrato de transacción, sino una estipulación.[38]

**III.**

En su recurso, el Sr. De León aduce que el foro primario incidió al no celebrar una vista evidenciaria para determinar si hubo un error al calcular la cantidad base de la cuenta IRA Fácil ante su alegación de que su consentimiento estuvo viciado al momento de llegar a los acuerdos transaccionales con la Sra. Vázquez que

---

[33] S. Tamayo Haya, *El Contrato de Transacción*, Madrid, Ed. Thomson/Civitas, 2003, pág. 141. Véase, además: López de Barba, *op. cit.,* pág. 89.

[34] J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. IV, pág. 583.

[35] Tamayo Haya, *op. cit.*, pág. 210. Véase: *López Tristani v. Maldonado Carrero*, supra, pág. 857.

[36] Tamayo Haya, *op. cit.,* pág. 144.

[37] L.R. Rivera Rivera, *El contrato de transacción: sus efectos en situaciones de solidaridad*, San Juan, Jurídica Ed., 1998, pág. 55.

[38] *Mun. San Juan v. Prof. Research*, supra, pág. 241.

resultaron en la sentencia apelada. Sobre el particular, el Sr. De León alegó que los estados de cuenta demostraban que la cantidad estipulada y determinada por el TPI es incorrecta. Sin embargo, éste no incluyó los referidos estados de cuenta para sustentar lo alegado.[39]

Por su parte, la Sra. Vázquez adujo que entre las partes se estableció un acuerdo de transacción que cumplió con todos los requisitos de un contrato válido, con el valor de una sentencia, no sujeto a revocación por inconformidad unilateral planteada tardíamente. Adujo que el Sr. De León suscribió una estipulación específica que puso fin a la controversia, producto de una negociación asistido por su abogado y que la misma fue confirmada en varias ocasiones por el apelante.

Conforme discutido, en nuestro ordenamiento jurídico se reconoce la figura del acuerdo transaccional cuando, luego de haberse iniciado un pleito, las partes pactan eliminar la controversia y solicitan incorporar el acuerdo al proceso judicial.[40] Según se desprende del expediente, las partes acordaron una serie de términos y condiciones para llevar a cabo la liquidación de bienes gananciales, sin necesidad de celebración de un juicio y, por ende, sin llevarse a cabo una vista evidenciara. En este caso, las partes pusieron fin al pleito de división de bienes gananciales mediante concesiones recíprocas, precisamente la adjudicación de los bienes y deudas que formaron parte de la sociedad legal de bienes gananciales.

En lo aquí pertinente, las partes estipularon que la cantidad depositada a la cuenta de IRA Fácil fue por $143,269.00, pero tenían que restar las cantidades de dinero que la Sociedad Legal de Bienes

---

[39] El Sr. De León expuso que los estados de cuenta no fueron presentados debido a que las estipulaciones tornaron innecesario el desfile de prueba. Véase, pág. 6 del recurso de apelación.
[40] *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870-871.

Gananciales utilizó para el pago de algunas cuentas y gastos de construcción. Después de dichas deducciones, se certificó un balance de $85,000.00, a ser dividido en partes iguales, a razón de un cincuenta por ciento (50%) cada uno, lo que resulta en $42,500.00 para cada parte. Así estipulado y reiterado por las partes en corte abierta, el foro primario acogió los acuerdos y los incluyó como parte de la *Sentencia*. En consecuencia, se ordenó el pago a favor de la Sra. Vázquez por la cantidad de $42,500.00 procedentes de la cuenta IRA Fácil.

En su solicitud de reconsideración, el Sr. De León no alegó que su consentimiento hubiese estado viciado al momento de alcanzar el acuerdo ni que los estados de cuenta de la cuenta IRA Fácil reflejaran una cantidad distinta. Éste se limitó a expresar que la cantidad de $85,000.00 establecida como base era incorrecta, y que dicha suma, a su entender, debió ser de $60,000.00. Para fundamentar su solicitud acompañó una declaración jurada en la que, sin más, expresó que estaba dispuesto a someter una propuesta de pago a la Sra. Vázquez por la cantidad de $30,000.00, sobre la base de $60,000.00, porque considera que es la cantidad justa del remanente obtenido luego del débito de los gastos.

Sin embargo, de la solicitud de reconsideración y de la declaración jurada no surge prueba que sustente su alegación de que la base correcta para realizar la división era de $60,000.00. Tampoco el Sr. De León presentó evidencia para probar que la información que dio base a la estipulación era incorrecta y que ello lo llevó a brindar un consentimiento alegadamente viciado. De un examen de la referida moción, así como del dictamen apelado, surge con claridad que la cantidad total a pagarse a la Sra. Vázquez asciende a $43,422.90—la cual consiste en $42,500.00 procedentes de la cuenta IRA Fácil y $922.90 de la cuenta de Banco Popular. Las

sumas antes indicadas fueron las acordadas y reiteradas por el Sr. De León en corte abierta y en la Moción Conjunta.

Cabe señalar que, en todas las etapas del pleito, el Sr. De León estuvo asistido por su abogado. Con todo, el TPI le tomó juramento y examinó en cuanto a su decisión sobre el acuerdo alcanzado, a lo que el Sr. De León expresó que se allanaba de forma libre y voluntaria.[41] Ante ello, colegimos que su alegación de que su consentimiento estuvo viciado carece de méritos.

Así, luego de evaluar detenidamente el presente recurso, los documentos que conforman el apéndice y el expediente electrónico del caso, concluimos que no se cometió el error señalado. En vista de que el Sr. De León estipuló en la Moción Conjunta que el balance de la cuenta IRA Fácil era de $85,000.00 y que la división sería en un 50% para cada parte ($42,500.00 para cada parte), sus alegaciones, sin prueba que las sustente, no justifican dejar sin efecto o modificar la estipulación a la que él llegó de forma libre y voluntaria y, por ende, el acuerdo de transacción judicial que puso fin al pleito.

En virtud de lo antes expuesto, concluimos que el foro primario no incurrió en el error señalado, por lo que procede confirmar la sentencia apelada.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[41] Véase *Minuta* del 20 de marzo de 2025, Apéndice XIII del recurso, pág. 32-33.