ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MARÍA M. ONDINA GORDO<br><br>Apelada<br><br><br>v.<br><br><br>LUIS O. CARDONA PAGÁN<br><br>Apelante | KLAN202400696 | Apelación procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm.<br>K AC2015-0636<br><br>Sobre:<br>División de Comunidad |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, la Jueza Santiago Calderón y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de marzo de 2026.

Compareció el Sr. Luis O. Cardona Pagán (en adelante, "señor Cardona Pagán" o "apelante") mediante el recurso de apelación de epígrafe. Nos solicitó la revocación de la *Sentencia Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "foro de instancia"). En el aludido dictamen, el foro de instancia ordenó el pago de $136,511.76 a favor de la Sra. Maria M. Ondina Gordo (en adelante, "señora Ondina Gordo" o "apelada") por su participación en la comunidad de bienes compuesta por ella y señor Cardona Pagán.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia Enmendada* apelada.

**-I-**

La señora Ondina Gordo instó *Demanda* sobre división de bienes post gananciales contra el señor Cardona Pagán.[2] Alegó que estuvo casada con el señor Cardona Pagán por veintidós (22) años bajo el régimen económico ganancial y que adquirieron tanto bienes muebles e inmuebles como

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025, se designó al Juez Isaías Sánchez Báez en sustitución del Juez Nery E. Adames Soto.
[2] Apéndice del recurso, tomo I, anejo 113, págs. 429-431.

deudas, las cuales no han sido divididas. Por lo que, solicitó la liquidación de la comunidad de bienes post gananciales existente entre ellos.

Por su parte, el señor Cardona Pagán presentó su *Contestación a Demanda.*[3] Además, presentó una *Reconvención* en la cual alegó que tiene derecho a lo siguiente: (i) recibir renta por el uso y disfrute de una propiedad ganancial que tiene la señora Ondina Gordo; (ii) un crédito por el pago de un gravamen hipotecario y deudas gananciales; y (iii) reconocimiento de los adelantos efectuados a favor de la señora Ondina Gordo por su participación en la sociedad legal de gananciales.[4]

Posteriormente, ambas partes presentaron una *Moción conjunta ordenada por el Tribunal* mediante la cual esbozaron una lista de los asuntos incontrovertidos, así como de los controvertidos, a saber:

1. No hay controversia en que la masa post ganancial esta compuesta por los siguientes bienes y deudas.

   a. Bienes inmuebles:
   Residencia ubicada en Guaynabo, Puerto Rico [...]
   [...]
   Con un valor de $235,000.00.

   b. Bienes muebles:
   Mobiliario del hogar: $5,000.00
   Autos: PT Crusier: $10,000.00
   Cartera de seguros vendida a Vidal & Rodriguez: $283,000.00 que fue reducido a $214,666.00.

   c. Deudas:
   Consejo de residentes de Urb. Santa Clara: $5,000.00
   IRS: $71,342.49
   Sr. Harry Meléndez: $5,000.00

   d. Créditos privativos: La Sra. María Ondina tiene un crédito de $50,000.00.

   e. La Sra. María Ondina ha recibido adelantos a su participación por la cantidad de $35,000.00.

   f. La propiedad sita en la Urb. Santa Clara no se está efectuando pago alguno de hipoteca desde agosto 2016, por lo que está en proceso de ejecución.

   g. La Sra. María Ondina indica que se ha acogido a un caso de clase presentado en la Corte Federal en relación a la ejecución de hipoteca.

2. Hay controversia en los siguientes asuntos:
   a. Cuenta Spiegel    $1,992.17
   b. Préstamo BPPR: $17,232.29

---

[3] *Id.*, tomo I, anejo 114, págs. 426-428.
[4] *Id.*

    c.  Pagos efectuados en relación a la deuda de operación comercial:

| | |
|---|---|
| Sra. Ana Aponte: | $400.00 |
| Sra. Zory E. Rosario: | $2,209.20 |
| Sr. Sergio Diaz Saldaña | $500.00 |
| CRIM: | $262.35 |
| MRF Development: | $1,170.00 |
| Secretario de Hacienda: | $287.20 |
| Universal Insurance: | $14,953.45 |
| IRS: | $30,767.16 |

    d.  Cartera de seguro a Vidal & Rodríguez: 283,000.00 que fue reducido a $214,666.00.

    e.  Reclamación de parte del Sr. Luis O. Cardona por renta de la propiedad.

    f.  IRS: $117,176.83.

    g.  Hay una controversia entre las partes en relación a la cantidad de $117,000.00 que aparece en el contrato de venta de la cartera de seguros de Vidal & Rodriguez, por lo cual las partes presentaron sus respectivos memorando de derecho, según fue ordenado por el Tribunal.[5]

Tras un extenso trámite procesal, el foro de instancia celebró el juicio en su fondo.[6] Allí ambas partes tuvieron oportunidad de presentar sus propios testimonios y estipularon los documentos siguientes: (i) sentencia de divorcio y (ii) *asset purchase agreement*. Además, el señor Cardona Pagán presentó el testimonio de la Sra. Roció Brinez Rogelis y como prueba documental lo siguiente: (1) carta administración apartamento de Santa Ana, (2) acuerdo transaccional, (3) pagaré, (4) documentos del IRS, (5) certificación de deuda del Departamento de Hacienda, (6) planilla 2014, (7) cheque del Departamento de Hacienda y (8) carta de Vidal & Rodríguez Insurance Brokers.

Así las cosas, el foro de instancia dictó *Sentencia* por escrito mediante la cual declaró ha lugar la demanda y reconvención respecto a la señora Ondina Gordo. En consecuencia, ordenó el pago de $141,511.76 a su favor por su participación en la comunidad de bienes compuesta entre ella y el señor Cardona Pagán.[7] Además, consignó una lista de hechos estipulados y otra lista de determinaciones de hechos.

Tras la presentación de una solicitud de reconsideración y de determinaciones de hechos adicionales, así como su respectiva oposición,

---

[5] *Id.*, tomo I, anejo 76, págs. 343-344.
[6] *Id.,* tomo I, anejos 23 y 24, págs. 77-83.
[7] *Id.*, tomo I, anejo 13, págs. 47-54.

el foro de instancia dictó *Sentencia Enmendada* para modificar las listas de

hechos estipulados y de determinaciones de hechos de la manera siguiente:

## I.    HECHOS ESTIPULADOS

1. Las partes d epígrafe se divorciaron mediante Sentencia del 8 marzo de 2012 dictada por el Tribunal de Primera Instancia Sala de Bayamón en el caso DDI2011-1497.
2. Las partes estuvieron casadas entre sí por 22 años bajo el régimen económico de sociedad de bienes gananciales.
3. El 26 de junio de 2017, las partes presentaron "Moción Conjunta Ordenada por el Tribunal en la que estipularon ciertos bienes y ciertas deudas.
   a) Activos:
      a. Bien inmueble en la Urb. Santa Clara, Guaynabo PR
      b. Bienes Muebles
         - Mobiliario del hogar: $5,000.00
         - Autos PT Cruiser: $10,000.00
         - Cartera de Seguros vendida a Vidal/Rodríguez
   b) Deudas:
      a. Consejo de Residentes de Santa Clara $5,000.00
      b. IRS: $71,342.49.
      c. Sr. Harry Méndez: $5,000.00
   c) Créditos: La Sra. Maria Ondina tiene un crédito de $50,000.00.
   d) Adelantos: La Sra. Maria Ondina ha recibido adelantos a su participación por $35,000.00
   e) Quedó pendiente resolver la adjudicación de las siguientes deudas:
      a. Cuenta Spiegel
      b. Préstamo Banco Popular
      c. Pagos de negocio del demandado:
         - Ana Aponte                          $      400.00
         - Zoraida E. (Zory) Rosario           $   2,209.20
         - Sergio Diaz Saldaña                 $      500.00
         - CRIM                                $      262.35
         - MRF Development                     $   1,170.00
         - Secretario de Hacienda             $      287.20
         - Universal Insurance                 $14,953.45
         - IRS                                 $30,767.16

## III.    DETERMINACIONES DE HECHOS

1. El demandado es corredor de seguros desde 1989, fecha anterior al matrimonio.
2. El demandado devengaba ingresos de su trabajo entre $75,000 a $80,000 anuales.
3. El demandado vendió su cartera de seguros el 1ro de abril de 2014.
4. El demandado había acordado vender su cartera de seguros en $400,000.00 sujeto a unas condiciones.
5. Al momento de la firma del contrato de venta de la cartera, recibió $160,000.00.
6. La cantidad total recibida por la venta de la cartera recibió $331,666.00.
7. El demandado estableció su oficina profesional en el Edificio Santa Ana en o alrededor el año 1998.
8. El dueño del local era la compañía MRF Development.
9. La deuda por concepto de renta atrasada ascendía a $1,170.00
10. El demandado dice que saldó la deuda, pero no presentó evidencia de ello.[8]

---

[8] *Id.*, tomo I, anejo 1, págs. 3-4.

Asimismo, el foro de instancia rectificó su dictamen para que la suma a pagarse a favor de la señora Ondina Gordo fuese $136,511.76 correspondiente a su participación en la referida comunidad de bienes.

Inconforme con lo anterior, el señor Cardona Pagán acudió ante nos mediante el recurso de apelación de epígrafe y esbozó los señalamientos de error siguientes:

1. Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al acoger la "Moción Conjunta Ordenada por el Tribunal" de 26 de junio de 2017 como una estipulación entre las partes e incluirlas como hechos estipulados en violación del debido proceso de ley de la parte compareciente.

2. Erró el Honorable Tribunal de Primera Instancia al no admitir en evidencia una libreta de cheques comercial por medio de la cual se pretendía probar el pago de ciertas deudas relacionadas a la operación del negocio, cometiendo así un abuso de discreción del foro recurrido.

3. Erró el Honorable Tribunal de Primera Instancia al concluir que no reconoce la deuda de MRF Development a pesar de la factura de esta y el testimonio de la parte compareciente sobre tal deuda.

4. Erró y abusó de su discreción el Honorable Tribunal de Primera Instancia al no reconocerle al apelante un crédito por concepto de renta por no usar la residencia bajo el fundamento de que no se presentó prueba pericial.

5. Erró el Honorable Tribunal de Primera Instancia al no reconocerle al apelante un crédito por la mitad de la deuda del IRS que ha sido pagada por el Apelante por dos años y así surgir de la prueba presentada ante su consideración.

6. Erró el Honorable Tribunal de Primera Instancia en no considerar la evidencia admitida propuesta por la parte apelante en los exhibits presentados por esta, siendo esto un abuso de discreción y un error manifiesto en la apreciación de la prueba.

Por su parte, la señora Ondina Gordo presentó su alegato en oposición. Tras la presentación de la *Transcripción de regrabación de vista 16 y 18 de marzo de 2012,* ambas partes presentaron sus alegatos suplementarios.

Así pues, perfeccionados todos los recursos consolidados, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Estipulación de hechos**

Las estipulaciones "son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas". *Rivera Menéndez v. Action Services,* 185 DPR 431, 439 (2012); *Mun. de San Juan v. Prof. Research,* 171 DPR 219, 238 (2007); *PR Glass Corp. v. Tribunal Superior,* 103 DPR 223, 231 (1975). Esto es, eliminan desacuerdos y simplifican la solución de las controversias jurídicas. Además, tienen la finalidad de evitar dilaciones, inconvenientes y gastos, por lo que su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica. *Mun. de San Juan v. Prof. Research,* supra. En nuestra jurisdicción, las estipulaciones son promovidas por las Reglas de Procedimiento Civil y representan una herramienta esencial en las etapas inicial trámite judicial. Véase, Regla 37 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.

Inclusive, nuestro Tribunal Supremo ha establecido que "[c]omo regla general, un juez debe aceptar los convenios y las estipulaciones de las partes". *Id.* Ahora bien, cuando una parte acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla. *Díaz Ayala et al. v. ELA,* 153 DPR 675, 693 (2001). Sin embargo, se ha establecido que las estipulaciones deben interpretarse de forma liberal y compatible con la intención de las partes y el propósito de hacer justicia. *Id.* En caso de que existan dudas de la intención de las partes, "se debe adoptar la contención que sea más favorable para la persona a cuyo favor se hizo la estipulación". *Ramos Rivera v. ELA,* 148 DPR 118, 126 (1999) citando a *PR Glass Corp. v. Tribunal Superior,* supra.

Nuestro ordenamiento ha reconocido tres (3) categorías de estipulaciones. *Rivera Menéndez v. Action Services,* supra. La primera categoría es la estipulación de hechos, lo cual constituye una admisión y tiene el efecto de dispensar el requisito de probar tales hechos. *Id.* Incluso, esa estipulación de hecho sustituye la prueba que se hubiera presentado en su día en corte y no puede ser impugnada posteriormente. *Id.,* págs.

439-440. Por lo tanto, la norma general es que una estipulación de hecho admite su veracidad y obliga tanto al tribunal como a las partes. *Id.*

La segunda categoría de estipulaciones es aquella que reconoce derechos y tiene el alcance de una adjudicación. *Id.*, pág. 440. Es decir, son aquellas que ponen fin a un pleito o a un incidente en este. *Id.* Además, este tipo de estipulación obliga a las partes, tiene efecto de cosa juzgada y se puede considerar como un contrato de transacción, si cumple con los requisitos de ley. *Id.*

Por último, la tercera categoría es la estipulación procesal, la cual plantea determinado curso de acción. *Id.,* pág. 440. En otras palabras, las partes acuerdan la forma y manera en la que se llevará a cabo determinado trámite procesal. *Id.* Nuestro ordenamiento contempla la estipulación procesal, por ejemplo, en el proceso de deposiciones, así como en otros mecanismos de descubrimiento de prueba, y en la admisión de prueba y su autenticación. Véase, Regla 26 de Procedimiento Civil, 32 LPRA Ap. V., R. 26; Regla 901 de Evidencia, 32 LPRA Ap. VI, R. 901.

**B. Evaluación de la prueba y su admisión o exclusión**

La Regla 110 de Evidencia establece que el juzgador de los hechos tiene el deber de "evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados". 32 LPRA Ap. VI, R. 110. Asimismo, la aludida regla, establece los principios siguientes:

> (A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.
> (B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.
> **(C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza**.
> (D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.
> (E) La juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente.
>
> [...]

(G) Cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha. *Id.*

De manera que, la evaluación de la prueba incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma. En lo particular, "[l]a función del tribunal al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que amerita la prueba presentada". *Pueblo v. Colón, Castillo,* 140 DPR 564, 582 (1996). No obstante, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013).

Ahora bien, las Reglas 104, 105 y 106 de Evidencia, 32 LPRA Ap. VI, regulan el procedimiento a seguir ante la admisión o exclusión errónea de evidencia y el efecto que tiene la comisión de un error de esta naturaleza sobre un dictamen.

Por un lado, la Regla 104 (A) de Evidencia establece que, si una de las partes entiende que el juzgador de instancia erró al admitir cierta prueba, deberá hacer una de dos cosas: (i) objetar de forma oportuna, específica y correcta; o (ii) presentar una moción para que se elimine del récord. 32 LPRA Ap. VI, R. 140 (A).

De otra parte, la Regla 104 (B) de Evidencia dispone que, si una parte entiende que el juzgador de instancia erró al excluir cierta prueba, deberá hacer una oferta de prueba en la cual indique con claridad la evidencia excluida, su naturaleza, propósito y pertinencia que ofrece, así como el fundamento específico para su admisibilidad. 32 LPRA Ap. VI, R. 104 (B).

Como regla general, no se dejará sin efecto la admisión o exclusión de errónea de evidencia ni se revocará una sentencia, salvo que: (i) se haya satisfecho los requisitos de la precitada Regla 104 de Evidencia y (ii) si la

evidencia fue un factor decisivo en la sentencia emitida. 32 LPRA Ap. VI, R. 105 (A). En otras palabras, que, si no se hubiera cometido el error, el resultado hubiera sido distinto. *Izagas Santos v. Family Drug Center*, 182 DPR 463, 483-484 (2011). De no ser así, se entenderá que es un error benigno, el cual no amerita que se revoque la determinación. *Id.*

Sin embargo, la Regla 106 de Evidencia permite que los foros apelativos consideren un señalamiento de error de admisión o exclusión errónea de evidencia y revocar una determinación, aunque la parte perjudicada haya incumplido con los requisitos referidos anteriormente si: (1) el error fue craso en el sentido de que no cabe duda de que fue cometido; (2) fue perjudicial porque tuvo un efecto decisivo en la determinación cuya revocación se solicita; y (3) el no corregirlo resulte en un fracaso de la justicia. 32 LPRA Ap. VI, R. 106.

**C. Apreciación de la Prueba**

Sabido es que los foros apelativos tenemos la facultad de revisar en su totalidad las conclusiones de derecho que emita el Tribunal de Primera Instancia. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Sin embargo, en cuanto a las determinaciones de hechos, la Regla 42.2 de Procedimiento Civil dispone lo siguiente:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

32 LPRA Ap. V, R. 42.2.

Lo anterior, basado en que, el foro primario merece gran deferencia, ya que es quien está en mejor posición de evaluar y adjudicar la credibilidad de un testigo. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 810 (2009); *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Esto es, es el Tribunal de Primera Instancia quien tiene la oportunidad de apreciar los gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones, entre otros elementos subjetivos, de los testigos que declaran en el pleito. *Argüello v.*

*Argüello*, supra, págs. 78, citando a *Figueroa v. Am. Railroad Co.*, 64 DPR 335, 336 (1994).

Por ello, nuestro Tribunal Supremo ha sido enfático en que los tribunales apelativos —como regla general— debemos evitar intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el foro primario, salvo que se demuestre que este incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Ramírez Ferrer v. Conagra Foods PR*, supra, pág. 811; *Argüello v. Argüello*, supra págs. 78-79. Por tanto, nuestra intervención con la prueba testifical solo procederá cuando, al llevar a cabo un análisis integral de esta, "nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, supra, pág. 918. Por consiguiente, nuestra facultad de sustituir las determinaciones hechas por el Tribunal de Primera Instancia se limita a aquellas circunstancias en las que no exista base suficiente para apoyar las mismas a la luz de la prueba admitida. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

De este modo, una parte que impugne las determinaciones de hechos emitidas por el foro primario debe identificar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *SLG Rivera Carrasquillo v. AAA,* 177 DPR 345, 356 (2009). Dicha parte deberá "sustentar sus alegaciones con evidencia suficiente, pues estas no deben convertirse en un instrumento para ejercer presión contra el Tribunal de Primera Instancia". *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. De esta forma, el foro apelativo podrá evaluar si el juzgador de los hechos cumplió con su rol de adjudicar la controversia conforme a derecho y de manera imparcial. *Id.*, pág. 777.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En el presente caso, el apelante esbozó seis (6) señalamientos de error. Procedemos a examinar el primer señalamiento de error de forma individual. En esencia, el apelante alega que el foro de instancia erró al acoger una moción conjunta preparada por ambas partes como una estipulación de hechos. No le asiste la razón. Veamos.

Conforme explicamos en el derecho aplicable, las estipulaciones son promovidas por nuestro ordenamiento y son consideradas como una admisión judicial mediante la cual se desiste formalmente de cualquier contención contraria a ellas. *Rivera Menéndez v. Action Services*, supra. Sin embargo, el Tribunal Supremo de Puerto Rico ha reconocido tres (3) categorías de estipulaciones. *Id.* El caso de marras está relacionado a la primera categoría conocida como estipulación de hechos. Este tipo de estipulación admite la veracidad de los hechos estipulados y tiene el efecto de relevar a las partes de probarlos, por lo que no pueden ser impugnados. *Id.* Esto es, las partes acuerdan aceptar como cierto unos hechos, sin la necesidad de probarlos en el juicio. Por tanto, esa estipulación de hechos sustituye la prueba que se presentaría en el juicio. *Id.* Así pues, como regla general, la estipulación de hechos obliga a las partes por su admisión y al tribunal por aceptarla. *Id.* No obstante, el tribunal debe interpretar las estipulaciones de forma liberal y compatible con la intención de las partes y el propósito de hacer justicia. *Díaz Ayala et al. v. ELA*, supra.

No hay dudas de que, el 27 de junio de 2017, ambas partes presentaron *Moción conjunta ordenada por el Tribunal* mediante la cual esbozaron una lista de los bienes y deudas incontrovertidos que pertenecen a la masa post ganancial, así como una lista de los asuntos controvertidos. Véase, apéndice del recurso, tomo I, anejo 76, págs. 343-344. En la medida que, las partes acordaron aceptar como ciertos los hechos que esbozaron en la mencionada moción, realizaron una estipulación de hechos. Por otra

parte, en el cumplimiento de su deber, la juez de instancia aceptó las referidas estipulaciones de las partes. Véase, apéndice del recurso, tomo I, anejo 75, pág. 342. Ante esto, es inequívoco que la mencionada estipulación de hechos obligó tanto a las partes como al foro de instancia. Así pues, ahora el apelante no puede pretender impugnar o negar la admisión judicial que se constituyó a través de la *Moción conjunta ordenada por el Tribunal.*

Por tanto, resulta forzoso concluir que el foro de instancia no erró al acoger *Moción conjunta ordenada por el Tribunal* como una estipulación de hechos realizada entre las partes e incluirlas como hechos estipulados en la *Sentencia Enmendada* apelada. En consecuencia, no se cometió el primer señalamiento de error.

Ahora, atenderemos en conjunto el segundo y tercer señalamiento de error. El apelante alega que el foro de instancia erró y abusó de su discreción al excluir evidencia que pretendía probar el pago de ciertas deudas relacionadas al negocio. A su vez, argumenta que el foro de instancia erró al no reconocer que su testimonio junto a una factura era suficiente evidencia para establecer la deuda con MRF Development. No tiene razón.

Acorde con el acápite II de esta *Sentencia,* el juzgador de instancia es quien evalúa la evidencia presentada y determina que hechos —si alguno— quedó demostrado con ello. 32 LPRA Ap. VI, R. 110. En particular, la Regla 110 de Evidencia dispone que la ocurrencia de un hecho queda establecida cuando la totalidad de la prueba haga más probable cierta conclusión. *Id.,* R. 110 (C). Asimismo, reconoce que el juzgador de instancia no está obligado a realizar su determinación conforme a la cantidad de testigos u otra evidencia que no le resulte convincente. *Id.,* R. 110 (E). De manera que, la determinación de lo que realmente ocurrió dependerá de la exposición del juzgador de instancia a la evidencia presentada. *Ortiz Ortiz v. Medtronic,* supra. Por tanto, el juzgador de instancia tiene la tarea de

analizar si la prueba presentada puede ser creíble por una persona razonable. Además, explicamos que la exclusión o la admisión errónea de evidencia no conlleva a la revocación de un dictamen de manera automática, cuando tal exclusión o admisión no es factor decisivo o sustancial en el resultado del pleito. 32 LPRA Ap. VI, R. 106. Sin embargo, cuando la exclusión o la admisión errónea es de tal envergadura que el tribunal considera que ésta fue un factor decisivo o sustancial en la sentencia, procede la revocación y concesión del remedio solicitado. *Id.* Para determinar si un error en materia de evidencia justifica revocar una sentencia hay que determinar si, de no haberse cometido el error, probablemente el resultado hubiera sido diferente. *Izagas Santos v. Family Drug Center*, supra.

Ciertamente del expediente surge copia de una libreta de cheques comercial marcada como identificación número 5 y no como *exhibit*, por lo que tenemos certeza de que no fue admitida en evidencia. Véase, apéndice del recurso, tomo II, anejo 11, págs. 62-67. No obstante, tras evaluar la Transcripción de Prueba Oral, ni hallamos el momento en el cual el apelante intentó presentar la mencionada libreta de cheques como evidencia, ni identificamos cuando el Tribunal no permitió su admisión. A esos efectos, lo único que surge de la Transcripción de Prueba Oral es que —durante el contrainterrogatorio del apelante— la juez de instancia expresó que no había permitido la admisión de un talonario en evidencia. Véase, TPO, pág. 151. Asimismo, consta que el apelante —durante su contrainterrogatorio— negó haber traído algún cheque o recibo de pago respecto a las deudas que alega haber satisfecho. Véase, TPO, págs. 138, 151-152. Tampoco surge del apéndice del recurso alguna orden, resolución o dictamen del foro de instancia resolviendo tal asunto. Por tanto, el apelante no nos ha puesto en posición para determinar si cumplió con los requisitos de la Regla 104 (B) de Evidencia sobre la exclusión de prueba. En alternativa y en cumplimiento con la Regla 106 de Evidencia, concluimos que la alegada exclusión errónea de la libreta de cheques

comercial no fue un error craso ni fue un factor decisivo o sustancial en la Sentencia Enmendada. Nótese que, una libreta de cheques comercial no ofrece confiabilidad o certeza para demostrar que en efecto se realizó cierto pago de deuda. Ello, en la medida que un cheque puede ser emitido, pero no entregado o cobrado. Distinto es el caso de presentar en evidencia copia de un cheque cancelado.

Lo mismo ocurre con la alegada factura de MRF Development. Aunque tal factura no expresa que el remitente sea MRF Development ni quien fue el suscribiente, el apelante testificó en el juicio que MRF Development era la compañía a la cual le pagaba un canon de arrendamiento por el uso de la oficina ubicada en los apartamentos de Santa Ana. Véase, TPO, págs. 78-79, además, véase apéndice del recurso, tomo II, anejo 3, pág. 15. Respecto a esto, la juez de instancia otorgó credibilidad y así lo hizo constar en las determinaciones de hechos de la *Sentencia Enmendada.* Véase, apéndice del recurso, tomo I, anejo, 1, pág. 4. Ahora bien, a pesar de que, el foro de instancia permitió la admisión de la factura de MRF Development como evidencia, la realidad es que la mencionada factura por sí sola no ofrece confiabilidad o certeza de la alegada deuda y de los pagos que pudieron haberse efectuado. Tan es así que la referida factura establece la existencia de una alegada deuda de $2,580.00 correspondiente a cinco (5) meses sin siquiera indicar el año correspondiente de esos meses adeudados. Véase, apéndice del recurso, tomo II, anejo 3, pág. 15. Por consiguiente, coincidimos con el foro de instancia en cuanto a que la factura de MRF Development ni nos otorga certeza alguna de que el apelante haya realizado el pago, ni nos coloca en posición para advenir en conocimiento de la vigencia, condonación o descargue de la alegada deuda. Por tanto, igual que el foro de instancia, entendemos que la mejor evidencia de pago es un cheque cancelado o una factura que refleje el respectivo pago.

Así pues, no encontramos razón alguna para intervenir con la determinación del foro de instancia. Tampoco podemos afirmar que la actuación del foro de instancia fuese el resultado de abuso de discreción. Por lo que, concluimos que ni el segundo ni el tercer señalamiento de error fue cometido.

Por último, procedemos atender el cuarto, quinto y sexto señalamiento de error de forma conjunta por estar relacionados entre sí. En síntesis, el apelante cuestiona la apreciación de la prueba que realizó el foro de instancia. Por un lado, alega que el foro de instancia erró al negar un crédito por concepto de renta por no usar la residencia ganancial y un crédito de la deuda del IRS. Además, aduce que el foro de instancia no consideró la evidencia admitida por el apelante. Adelantamos que, ninguno de los argumentos nos persuade. Veamos.

Según el resumen doctrinal esbozado anteriormente, salvo que haya incurrido en error manifiesto, pasión, prejuicio, o parcialidad, nuestro ordenamiento jurídico invita a que los tribunales apelativos se abstengan de intervenir con la apreciación de la prueba del Tribunal de Primera Instancia. Esto se debe a que es el foro de instancia quien está en mejor posición de adjudicarle credibilidad a los testimonios vertidos en el pleito ante su consideración, pues tiene la oportunidad de evaluar el comportamiento de los testigos. Únicamente procederá que esta Curia sustituya las determinaciones de hechos que hace el Tribunal de Primera Instancia cuando no exista en el expediente base suficiente para apoyarlas.

Al evaluar la prueba presentada en el presente caso, no observamos que el Tribunal de Primera Instancia haya incurrido en error manifiesto, pasión, prejuicio o parcialidad que amerite nuestra intervención. Por el contrario, surge claramente del expediente que, en un dictamen bien fundamentado, el Foro *a quo* tomó en consideración, tanto la prueba testifical como la documental que fue presentada por ambas partes. Ello, lo llevó a adjudicar las controversias ante su consideración de la forma más razonable posible. Nótese que el foro de instancia concluyó que el

testimonio del apelante respecto al crédito de renta no era adecuado, ya que no poseía las cualificaciones o capacidad para hacer una determinación sobre el precio de alquiler de una propiedad y, en alternativa, no presentó prueba pericial para demostrarlo. Véase, TPO, págs. 110-113. Por otra parte, el foro de instancia concluyó que no procedía reconocer un crédito por la deuda del IRS, toda vez que se no presentó evidencia de los alegados pagos que realizó y tal asunto no fue planteado en el informe de conferencia con antelación a juicio. Véase, TPO, pág. 198. Ante estos hechos, el apelante no nos ha puesto en posición para determinar lo contrario y, por tanto, debemos otorgar deferencia al foro de instancia en cuanto a las determinaciones que realizó. Así pues, habiendo evaluado los hechos del presente caso, así como el derecho aplicable, colegimos que el foro de instancia no cometió el cuarto, ni el quinto, ni el sexto señalamiento de error.

-**IV**-

Por los fundamentos expuestos previamente, se **confirma** la *Sentencia Enmendada* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones