Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| RICHARD CORA NIEVES, DENNIS CORA NIEVES, DAVID CORA NIEVES y OTROS<br>Recurridos<br><br>v.<br><br>ÁNGEL LUIS HERNÁNDEZ RAMOS<br>Peticionario | TA2026CE00171 | *Certiorari* procedente del Tribunal de Primera de Instancias, Sala de San Lorenzo<br><br>Caso Núm. SL2024CV00033<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de abril de 2026.

Comparece el señor Ángel Luis Hernández Ramos (señor Hernández Ramos o peticionario), mediante recurso de *certiorari,* solicitando que revoquemos una *Resolución Interlocutoria sobre Segunda Reconsideración* emitida por el Tribunal de Primera Instancia, Sala Superior de San Lorenzo (TPI), el 7 de enero de 2026. Durante la etapa de descubrimiento de prueba que se está llevando a cabo en un pleito sobre liquidación de una comunidad de bienes gananciales, el foro primario determinó permitirle a los recurridos de epígrafe realizar otra tasación de cierta propiedad comunitaria cuyo valor está en controversia, a pesar de que, previo a ello, el Tribunal había elegido un perito para esa misma función.

Adelantamos que la controversia alzada ubica dentro del manejo del caso por el foro primario, al cual mostramos deferencia salvo que acontezcan unas circunstancias excepcionales, ausentes en este caso. Por tanto, *denegamos expedir.*

## I. Resumen del tracto procesal

El 31 de enero de 2024 los hermanos Richard Cora Nieves, Dennis Cora Nieves, David Cora Nieves, Jaime Hernández Nieves y José E. Álvarez Nieves (los recurridos), todos hijos de la causante Santa Nieves Miranda, instaron una *Demanda* sobre división o liquidación de la comunidad de bienes hereditarios, contra el señor Hernández Ramos, quien estaba casado con la causante al momento del fallecimiento de esta. Habiendo alegado que la causante murió intestada, solicitaron que se ordenara el inventario, la valoración y la distribución de los bienes relictos, que describieron, así como la liquidación de la participación de los recurridos en tales bienes, y el pago de una renta mensual no menor de cinco mil dólares ($5,000.00) para el recurrido, a ser pagada de los fondos pertenecientes a la comunidad hereditaria. En lo pertinente al asunto ante nuestra consideración, se afirmó que el señor Hernández Ramos mantiene la posesión absoluta de la propiedad inmueble donde reside en el Barrio Quemados de San Lorenzo, siendo dicha propiedad parte de los bienes relictos objeto de liquidación hereditaria, consistente en una finca con cabida aproximada de sobre cinco cuerdas, con varias estructuras, incluyendo piscina y otras facilidades, con un valor aproximado en exceso de 3.5 millones de dólares.[1]

En respuesta, el 1 de abril de 2024, el señor Hernández presentó un escrito incluyendo *Contestación a Demanda, Defensas, Reconvención,* y *Descubrimiento de Pruebas.* Entre las alegaciones incluidas, afirmó que ciertos bienes de los cuales los recurridos solicitaban partición, eran privativos, habiendo entrado al matrimonio con la causante como un contratista próspero, con bienes y empresa. En lo que concierne, esgrimió que la propiedad inmueble donde reside fue construida mientras estuvo casado con la causante, pero los terrenos en que se construyó son totalmente privativos de su pertenencia, existentes antes del matrimonio.

---

[1] Entrada Núm. 1 de SUMAC, Demanda, inciso duodécimo.

Ante ello, los recurridos presentaron *Contestación a la Reconvención*, admitiendo algunas alegaciones, negando otras y alzando defensas afirmativas.

Ya en etapa de descubrimiento de prueba, el foro recurrido ordenó la celebración de una vista para argumentar sobre la necesidad de nombrar un administrador, a celebrase el 21 de agosto de 2024. En efecto, realizada tal vista en la fecha pautada, el TPI aludió a la preferencia que muestra el Código Civil de 2020 por el cónyuge supérstite como administrador del caudal hereditario, por lo que, en concordancia, permitió al señor Hernández Ramos continuar como administrador del caudal hereditario de la causante. Ese mismo foro dispuso, además, que el ejercicio de tal administración por el peticionario acontecería bajo las siguientes condiciones:

1) En el término de noventa {90} días presentará inventario completo de los bienes del caudal hereditario y una relación completa de los ingresos y gastos. Esto a partir del fallecimiento de la causante, doña Santa Nieves Miranda hasta treinta {30} días antes del término para presentar el informe.

2) A partir de dicho Informe Inicial de Inventario, las partes tendrán el término de noventa {90} días para ponerse de acuerdo de los profesionales que realizarán el avalúo de los bienes del caudal y llevar a cabo el mismo.

3) El señor Ángel Luis Hernández Ramos será responsable, a partir de rendir el Informe Inicial; presentar un Informe Trimestral donde desglosará los ingresos y egresos del caudal hereditario. El mismo será radicado a través de moción y notificado a las partes.[2]

Entonces, según se recoge en la *Minuta* de 11 de marzo de 2025, convocadas las partes para una *Vista de estado de los procedimientos*, el Tribunal les concedió un término de veinte días para que acordaran un perito que evaluara el caudal, (asunto advertido desde una vista anterior). Sobre esto añadió que, si las partes no lo lograban acordar el perito en el término dispuesto, entonces contarían con diez días para someter

---

[2] Entrada Núm. 21 de SUMAC.

candidatos con los nombres y *curriculum vitae* de cada uno de los peritos que recomendaran.[3]

Sin embargo, por cuanto las partes no lograron acordar un perito, instaron sendas mociones sometiendo sus respectivos candidatos para que el Tribunal lo eligiera.

En consecuencia, el 2 de abril de 2025, el TPI emitió una *Orden* designando al señor Milton Flores como tasador y evaluador de los bienes del caudal hereditario, "debido a sus credenciales educativas superiores, diversa experiencia ante los foros judiciales y conocimiento de la zona geográfica que nos compete".[4]

Insatisfechos con la elección del Tribunal, el 22 de abril de 2022, los recurridos presentaron una *Moción Solicitando Reconsideración de la Orden Emitida el 2 de abril de 2025,* aduciendo que ya existía controversia previa sobre el valor asignado por el tasador elegido a bienes del caudal, y otros tasadores de los recomendados mostraban credenciales mejores. Sin embargo, el TPI la denegó el mismo día de presentada, añadiendo que "al tasador se le debe proveer la información sobre las propiedades inmuebles incluidas en la Planilla de Caudal Relicto de doña Santa Nieves Miranda, así como de las propiedades inmuebles que no fueron incluidas en su Planilla de Caudal Relicto y posteriormente identificadas".[5]

Más adelante, y luego del TPI haber atendido diversos asuntos interlocutorios, el 10 de diciembre de 2025, los recurridos instaron *Moción en solicitud de Orden*. En lo pertinente, **afirmaron haber recibido las tasaciones hechas por el tasador Milton Flores**, pero estaban en desacuerdo con varias de estas, "muy especialmente con la tasación realizada a la propiedad donde reside el señor Hernández". Sobre esto último especificaron que la tasación del inmueble hecha por el referido

---

[3] Entrada Núm. 57 de SUMAC.
[4] Entrada Núm. 71 de SUMAC.
[5] Entrada Núm. 73 de SUMAC.

tasador había arrojado un valor de $595,000.00 para la estructura y $133,207.81 para el terreno, cuando, contrario a ello, tenían conocimiento de que "solo la construcción de dicha propiedad tuvo un costo de más del doble de dicho valor". A raíz de lo cual, **solicitaron autorización para obtener una tasación independiente de la referida propiedad**, que fuera realizada por la tasadora Mariela Monge Flores.[6] (Énfasis provisto).

Examinada la anterior *Moción*, en igual fecha, el TPI emitió una *Orden a la Parte Demandada*, concediéndole cinco (5) días para indicar su disponibilidad para que, en un periodo de tres horas, la señora Mariela Monge Flores realizara la tasación solicitada en las fechas ofrecidas por los recurridos. Añadió el mismo foro, estar consciente de la existencia de más de un método de tasación de las residencias, precisándolos, cuyos valores pueden diferir, aunque para unidades unifamiliares el método de valor en el mercado es el que suele prevalecer en la industria.

En dicho sentido, el foro primario acogió la solicitud de los recurridos para que un perito distinto al designado realizara otra tasación.

En desacuerdo, el 12 de diciembre de 2025, el peticionario presentó ante el TPI una moción que tituló *Reconsideración Oposición*. En esta, luego de referir las incidencias procesales que dieron lugar a la elección por el Tribunal de un tasador, arguyó que "una vez aceptado el tasador designado por esta curia, **sus tasaciones igualmente deben ser aceptadas por las partes, como incidente interlocutorio resuelto y acordado dentro del proceso poniendo fin a esa controversia**.[7] (Énfasis provisto). Sobre lo mismo agregó que "resulta improcedente pretender controvertir con otra prueba, una tasación aceptada por las partes, máxime cuando es esta misma curia, fue quien designo [*sic*] el tasador, aceptado por todos". *Íd.*

Considerada esta última moción, el 15 de diciembre de 2025, el TPI emitió una *Resolución sobre Reconsideración*, dejando sin efecto su *Orden*

---

[6] Entrada Núm. 108 de SUMAC.

[7] *Reconsideración Oposición*, Entrada 111 de SUMAC (TPI), pág. 4.

del 10 de diciembre de 2025. Es decir, el foro primario decidió no permitir otra tasación de la residencia, a través de la tasadora propuesta por los recurridos.

Con todo, el 30 de diciembre de 2025, los recurridos presentaron una *Moción Solicitando Reconsideración de la Resolución Emitida el 15 de diciembre de 2025 y en Oposición.* En síntesis, arguyeron que la jurisprudencia citada por el peticionario para sustentar su postura, *Rivera Menéndez v. Action Service*, 185 DPR 431 (2012) precisamente operaba en contra de lo que promovió dicha parte, pues claramente allí se estableció que la *estipulación de un hecho*, contrario a la estipulación sobre la *autenticación de evidencia*, implicaba el relevo de prueba solo de lo autenticado, por tal razón, **los tribunales no debemos dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes**. Por tanto, no habiendo sido estipulado en este caso por las partes el resultado de la tasación alcanzada por el tasador elegido por el Tribunal, no cabía tratarlo como un hecho estipulado.

A raíz de lo cual, el 8 de enero de 2026, el TPI emitió una *Resolución Interlocutoria sobre Segunda Reconsideración* acogiendo esta última solicitud de reconsideración instada por los recurridos, disponiendo que "los demandantes tendrán derecho a realizar otra tasación de la propiedad por perito de su selección".[8]

Una vez más, el 26 de enero de 2026, el peticionario presentó otra *Reconsideración II[,] Solicitud de Determinaciones de Hechos (Reglas 43.1 y 43.2 de Procedimiento Civil)[,] Aclaraciones*, esgrimiendo que:

> [...] [U]na vez designado por el tribunal un perito, cuando este realiza el trabajo encomendado como parte de una estipulación de hechos dentro de una materia procesal, nada impide que al perito designado se le deponga y/o o sea sometido a descubrimiento de pruebas en relación con su trabajo. Lo que es oponible, es que una vez se acepte su designación, función y su resultado, el mismo ni está sujeto a otra prueba oponible a la sometida por este y su informe como estipulación vinculante tiene como

---

[8] Entrada Núm. 119 de SUMAC.

consecuencia, un contrato transaccional con efecto de cosa juzgada.[9]

El 21 de enero de 2026, el TPI declaró *No Ha Lugar* la *Reconsideración II* instada por el peticionario, disponiendo lo siguiente:

> [...] [E]n el ejercicio del debido proceso de ley, para los demandantes poder cuestionar las determinaciones del perito tasador designado, necesitaría peritaje para sostener su cuestionamiento. Por lo tanto, y en ejercicio de la mayor cautela posible, les reconocemos el derecho a tasar la propiedad por perito de su selección. Claro está, este Tribunal, en su día, dirimirá el valor probatorio de los correspondientes informes[10].

Es así como el peticionario acude ante nosotros, mediante recurso de *certiorari*, señalando la comisión de los siguientes errores por el foro recurrido:

> **PRIMER ERROR:** Erró el Honorable TPI al revocarse continuamente y dejar sin efecto sus propias órdenes dictadas previamente, las cuales dejaron sin efecto las estipulaciones vinculantes aceptadas previamente por las partes y por el propio TPI. Todo ello, en contravención con la doctrina vigente sobre admisiones judiciales establecidas en *Menéndez v. Action Services Corp.*, 2022 JTS 86.

> **SEGUNDO ERROR:** Erró el Honorable TPI, al obviar y no RESPETAR ni acatar la doctrina vigente, que impide, en las estipulaciones vinculantes por admisiones judiciales, el que no se permita prueba en contrario a lo estipulado.

> **TERCER ERROR:** Erró el Honorable TPI al no acatar el efecto de cosa juzgada que tienen las estipulaciones vinculantes, como parte de una admisión judicial vinculante.

Por su parte los recurridos también comparecieron ante nosotros, aduciendo que "[e]n el presente caso **las partes no llevaron a cabo estipulación alguna en cuanto al valor a asignarse a la propiedad donde reside el [señor Hernández] por lo tanto no estamos ante una estipulación de hecho que tenga la consecuencia de no permitir prueba en contrario**".[11] (Énfasis provisto).

Con el beneficio de la comparecencia de las partes, disponemos del recurso ante nuestra consideración.

---

[9] *Reconsideración II[,] Solicitud de Determinaciones de Hechos (Reglas 43.1 y 43.2 de Procedimiento Civil)[,] Aclaraciones*, Entrada 120 de SUMAC (TPI), pág. 3.
[10] Entrada Núm. 121 de SUMAC.
[11] *Memorando en Oposición a la Expedición del Auto bajo la Regla 37 del Reglamento del Tribunal De Apelaciones*, Entrada 5 de SUMAC (TA), pág. 9.

**II. Exposición de Derecho**

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction,* 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal, y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.,* 212 DPR 194, 209 (2023); *Municipio Autónomo de Caguas v. JRO Construction,* supra, pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra, págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

Respecto a ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por vía de excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos

relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra*. De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40[12] de nuestro Reglamento, Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, __, 215 DPR __ (2025), se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró,* supra.

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Argüello v. Argüello*, 155 DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las

---

[12]  A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
   B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
   C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
   D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
   E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
   F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
   G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730. Además, en su mayor parte, las determinaciones interlocutorias pueden esperar hasta la conclusión final del caso para ser revisadas en apelación, juntamente con la sentencia dictada en el pleito. *IG Builders et al. v. BBVAPR,* supra, pág. 336.

b.

Entre las determinaciones discrecionales que toma el TPI se encuentran las atinentes al proceso de descubrimiento de prueba. En específico, nuestro Tribunal Supremo ha expresado, por una parte, que en Puerto Rico ha sido adoptada una política de que el alcance del descubrimiento de prueba sea amplio y liberal, y, por la otra, que **los tribunales tienen amplia discreción para regular el ámbito del descubrimiento**, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.,* supra, págs. 203-204. (Énfasis provisto).

Respecto a las determinaciones sobre la admisión o exclusión de peritos en el contexto del descubrimiento de prueba en particular, nuestro alto foro ha advertido que "el derecho a presentar prueba en apoyo de una reclamación constituye uno de los ejes centrales del debido proceso de ley". *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.*, supra, pág. 207; *Valentín v. Mun. de Añasco,* 145 DPR 887 (1998).

En la misma venia, se debe reconocer que el efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *In re Collazo I,* 159 DPR 141, 150 (2003). Por ello las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción. **El propósito de esta regla**

**consiste en que los foros apelativos no deben pretender administrar ni manejar el trámite regula de los casos ante el foro primario**. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). (Énfasis provisto).

Al mencionar las *decisiones discrecionales* en el párrafo que antecede, cabe reconocer la expresión del Tribunal Supremo a los efectos de que la discreción *es el más poderoso instrumento reservado a los jueces para hacer justicia. Rodríguez v. Pérez*, 161 DPR 637 (2004). De este modo, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). La máxima curia también ha enfatizado que la discreción judicial "se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Citibank et al. v. ACBI et al.*, 200 DPR 724 (2018).

c.

La estipulación es una admisión judicial que implica un desistimiento formal de cualquier contención contraria a ella. *P.R. Glass Corp. v. Tribunal Superior*, 103 D.P.R. 223, 231 (1975). Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos y no pueden volver nuevamente sobre estos. *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 516 (1988). En otras palabras, una de las partes no puede pretender volver a litigar algo que había sido estipulado, por razón de que ahora no está conforme con el resultado que produjo el acuerdo estipulado. Precisamente de eso es que se tratan las estipulaciones —de renunciar mutuamente a litigar la cuestión objeto de la estipulación—. *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860 (1995).

Es doctrina trillada que las estipulaciones obligan tanto al Tribunal como a las partes. *Coll Watlington v. Picó, Secretario de Hacienda*, 82 DPR

27, 36 (1960); *Rivera Menéndez v. Action Service*, supra. En *Rivera Menéndez v. Action Service*, supra, págs. 439-440, nuestra máxima curia reiteró que:

> Las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas. Estas son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas. Por ello, las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil.

Sin embargo, en la Opinión citada, luego del Tribunal Supremo identificar tres clases de estipulaciones, se detuvo a considerar la distinción entre estipular la autenticación de la evidencia *vis a vis* la estipulación de hechos. Respecto a estos últimos, el alto foro fue enfático al advertir que **las partes deben establecer con claridad su alcance**, y **los tribunales no deben dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes**. *Rivera Menéndez v. Action Service*, supra, págs. 441-443. (Énfasis provisto).

## III. Aplicación del Derecho a los hechos

La teoría legal del peticionario para solicitar que revoquemos la determinación interlocutoria recurrida, en la que se permite a los recurridos contratar un perito distinto al elegido por el Tribunal para realizar una tasación independiente de la residencia aludida, puede reducirse a su afirmación de que, una vez aceptada la designación, función y resultado de dicho perito, y este realiza el trabajo encomendado, la estipulación alcanzada por las partes torna el resultado al que se llegue en vinculante. Es decir, a juicio del peticionario, una vez el Tribunal escogió al perito Milton Flores para realizar la tasación del inmueble en que reside el primero, la cantidad que resulte de dicho ejercicio deberá tomarse como un hecho estipulado por las partes, sin oportunidad de ser impugnado. No nos persuade.

Simplemente, no apreciamos momento alguno en el tracto procesal en el que las partes hubiesen estipulado como un hecho el resultado de la tasación que se disponía a realizar el perito Milton Flores, ni mucho menos alguna adjudicación a dichos efectos por el tribunal *a quo*. Según enfatizamos en la exposición de derecho, para que opere la regla general que establece que una parte no puede impugnar un hecho ya estipulado, **las partes tienen que haber dispuesto clara y expresamente el hecho estipulado y su alcance**. *Rivera Menéndez v. Action Service*, supra. Aunque resulte reiterativo, la parte peticionaria no nos señala, por cuanto carece de dicha información, en qué lugar, momento o circunstancia los recurridos estipularon como un hecho las resultas de la tasación que se disponía a efectuar el perito Milton Flores. Más aún, en ninguna parte de la *Minuta* del 11 de marzo de 2025 surge que el foro recurrido dispusiera que los hallazgos de dicho perito no podrían ser refutados y que la tasación sería vinculante a las partes, al punto de no admitir evidencia en contrario.

Entonces, considerando la jurisprudencia que advierte que los tribunales gozan de amplia discreción para regular el ámbito del descubrimiento prueba, *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.*, supra, pág. 203; junto a que los foros apelativos no debemos pretender administrar ni manejar el trámite regular de los casos ante el foro primario, ni revocar las determinaciones discrecionales, a menos que se demuestre que ese foro abusó de su discreción; *SLG Zapata-Rivera v. J.F. Montalvo*, juzgamos evidente que en este caso no acontecieron las circunstancias que ameritaban nuestra intervención, a falta del abuso de discreción que lo justificaría. Tal como se intimó en la resolución recurrida, "el derecho a presentar prueba en apoyo de una reclamación constituye uno de los ejes centrales del debido proceso de ley". *Rivera Gómez v. Arcos Dorados de Puerto Rico, Inc.*, supra, pág. 207, asunto que está estrechamente relacionado con la decisión del TPI de permitir prueba pericial de los

recurridos para contrastar los resultados alcanzados por el tasador Milton Flores.

## IV. Parte dispositiva

Por los fundamentos expuestos, *denegamos* expedir el recurso de *certiorari* presentado.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones